# BAER BROTHERS MERCANTILE COMPANY *v.* DENVER & RIO GRANDE RAILROAD COMPANY.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 140. Argued December 16, 17, 1913.—Decided April 27, 1914.

Awarding reparation for excessive charges in the past and regulating rates for the future involve the determination of matters essentially different; while they may be dealt with in one order by the Interstate Commerce Commission, an order for reparation is not void because it does not fix the rate for the future.

An order of reparation is made by the Interstate Commerce Commission in its *quasi*-judicial capacity to measure past injuries to a private shipper, while an order fixing a new rate for the future is made in its *quasi*-legislative capacity to prevent future injury to the public.

An order for reparation for excessive rates in the past is not void because the order invalidates the excessive rate condemned for the future. Even though it might be desirable to deal with the entire matter at the time the joinder of the two subjects is not jurisdictional.

Although there may be no established through-rate or through-route between points in different States, the interstate character of the shipment cannot be destroyed by separating the rates into component parts and issuing local way-bills.

Where the shipment was actually interstate the Interstate Commerce Commission has jurisdiction to consider whether part of the rate which was charged on a local way-bill between two points in the same State is excessive.

A failure on the part of one of the carriers of a through interstate shipment to file tariffs cannot defeat the jurisdiction of the Interstate Commerce Commission to award reparation against that carrier for an unreasonable rate over its part of the haul because that part is wholly intrastate.

The voluntary dismissal of a suit for recovery of unreasonable rates is not a bar to a proceeding before the Interstate Commerce Commis-

sion for a reparation order. A voluntary dismissal is in the nature of
a non-suit and does not operate as a judgment on the merits.
187 Fed. Rep. 485, reversed.

BETWEEN July, 1902 and March, 1907 The Baer Broth-
ers Mercantile Company was engaged in the liquor business
at Leadville, Colorado. During those years it purchased
beer from a brewing company in St. Louis, Missouri,
which delivered the same in carload lots to the Missouri
Pacific, which acknowledged the receipt of the beer "in
good-order to be delivered to the Baer Brothers Company
at Leadville, Colorado, via the Denver & Rio Grande."
No through bill of lading was issued and as the two com-
panies had not established a through route, each ship-
ment was waybilled to Pueblo, Colorado, 923 miles dis-
tant, on the Missouri Pacific's local rate of 45 cents per
cwt. The car was then delivered to the Denver & Rio
Grande with an expense bill which described the shipment
and disclosed the charges paid by or due to the Missouri
Pacific. The Denver & Rio Grande then forwarded the
beer to Leadville, Colorado, 160 miles from Pueblo, at
its local rate of 45 cents per cwt., naming the Missouri
Pacific as consignor and the Baer Company as consignee.
Whether collected in advance at St. Louis or at destina-
tion in Leadville, the freight was always divided between
the two companies according to their local rates, the
Denver & Rio Grande in every instance receiving 45 cents
per cwt. on every shipment.

The Baer Company insisted that the rate was unreason-
able in fact and unjustly discriminatory and in 1906
brought suit, in the United States Circuit Court for the
District of Colorado, against both carriers to recover
from them $6,300, the amount of the unreasonable rate
alleged to have been paid on beer. That suit was volun-
tarily dismissed by plaintiff upon the publication of the
decision in the *Abilene Cotton Oil Case*, 204 U. S. 426.

The Baer Company then instituted proceedings before the Commerce Commission in which it prayed that the 90 cent rate should be declared unreasonable and unjust; that the Commission would establish a new and just rate on beer between St. Louis and Leadville, and that the two companies be required to pay plaintiff $7,299 as reparation for excess freight paid on beer shipped over the two lines between July, 1902 and March, 1907.

At the hearing it was admitted that the Missouri Pacific's charge of 45 cents for the haul of 923 miles from St. Louis to Pueblo was reasonable. In view of this admission the subsequent proceedings before the Commission involved an investigation as to the reasonableness of the Denver & Rio Grande's charge of 45 cents for hauling beer a distance of 160 miles, from Pueblo, Colorado, to Leadville, Colorado. The carrier insisted that in each instance the beer had been received by it as an independent shipment at Pueblo, Colorado, where a new waybill was issued and the car forwarded as an intrastate shipment to Leadville on an intrastate rate. It claimed that the Commission had no jurisdiction to inquire as to the reasonableness of such intrastate rate. It further contended that the rate of 45 cents was just and fair.

It appeared that although no through route had been established by the two roads, the regular filed tariff of the Missouri Pacific named 45 cents as the rate on beer between St. Louis and Pueblo. The Denver & Rio Grande had filed no tariff under the Commerce Act, but in compliance with the request of the Commission, addressed to all railroads, it had furnished a copy of tariffs showing its intrastate rates generally and that the local rate on beer from Pueblo to Leadville was 45 cents per cwt.

At the conclusion of the hearing, the Commission held (13 I. C. C. 329) that, even though no through route or through rate had been established, the Denver & Rio Grande in hauling this beer was engaged in interstate

commerce; that the mountainous character of the country through which the road was built and the steep grades made the cost of operation higher than for a similar distance on the Missouri Pacific, but ruled that, while this was true, the rate of 45 cents from Pueblo to Leadville was excessive to the extent of 15 cents per cwt. The report concluded as follows (p. 341):

"The prayer of the complaint is, among other things, that the Commission fix 'a just rate for the through transportation of beer in carload lots from said city of St. Louis to said city of Leadville.' There is no suggestion either in the complaint or in the prayer looking to the establishment of a joint rate, and that subject was not referred to either upon the trial or in the argument. This being so, we ought not to establish a joint through rate, and we do not think that we should undertake by our order to fix in this proceeding the locals which will make up the charge for the through movement in the future. There has been no practical difficulty in making these shipments over this route in the past. If the Denver & Rio Grande does not reduce its charge in accordance with this report, or if suitable through facilities are denied, the complainant can file its petition asking the establishment of a joint through route and rate."

Thereupon the following Reparation Order was entered April 6, 1908:

"This case being at issue upon complaint and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the Commission having, on the date hereof, made and filed a report containing its conclusions thereon:

"It is ordered, That the defendant, The Denver & Rio Grande Railroad Company, be, and it is hereby, notified and required to pay unto the complainant, The Baer Brothers Mercantile Company, of Leadville, Colorado, on

or before the 1st day of June, 1908, the sum of $3,438.27, with interest thereon at the rate of six per cent per annum from May 6, 1907, as reparation for excessive and unreasonable charge for the transportation of 2,292,178 pounds of beer from Pueblo, Colorado, to Leadville, Colorado, as part of a through transportation from St. Louis, Mo., to said Leadville, as more fully and at large appears in the report of the Commission in this case."

The Denver & Rio Grande refused to pay the amount of reparation awarded and thereupon the Baer Company brought suit against it in the United States Circuit Court for the District of Colorado, attaching to the complaint a copy of the award of the Commission.

By demurrer and plea the defendant attacked the jurisdiction of the Commerce Commission to pass upon the reasonableness of its rate between Pueblo and Leadville. It further contended that the Commission could not make an order of reparation unless at the same time, and as a part of such order, it fixed a through rate to be charged in the future. These objections were overruled and thereupon the plaintiff introduced the report and order of the Commission, proved the weight of the beer shipped, the rate of freight paid, and that the freight on beer for the longer distance between St. Louis and Salt Lake City, via the Missouri Pacific and the Denver & Rio Grande, was 70 cents per cwt.

The defendant then offered evidence to show that Leadville was not on the through line and was reached by a road 4½ miles long, the operation of which was unusually expensive because of the very steep grade throughout its entire length.

Defendant also introduced testimony for the purpose of showing that the beer, though forwarded by the Missouri Pacific to be delivered in Leadville, was actually received at Pueblo by the Denver & Rio Grande as an independent shipment, as though originating at Pueblo

and was then forwarded as an intrastate shipment on a local waybill. The court overruled the various contentions of the defendant and directed a verdict for the plaintiff for $3,761.45, being the amount of the reparation order, with interest. The court also allowed attorney fees to the plaintiff. The case was then taken by the Denver & Rio Grande to the Circuit Court of Appeals which held (187 Fed. Rep. 485) that it was not necessary to decide whether the Interstate Commerce Commission had jurisdiction to pass upon the reasonableness of the rate of 45 cents from Pueblo, Colorado, to Leadville, Colorado, saying that "an order of reparation without such an establishment of a reasonable maximum rate is beyond the power of the Commission and void, and as no such rate was prescribed and no order forbidding the future use of an excessive rate was made in the case in hand, the Commission's order of reparation in this case was beyond its power and void. This conclusion disposes of the case in hand and renders it impossible for a judgment to be obtained against the Railroad Company upon the reparation order of the Commission upon which the action is based. It is, therefore, unnecessary to consider the other questions in the case, and the judgment below is reversed." (p. 491). A mandate issued in which it was "ordered that this case be and the same is hereby remanded to the said Circuit Court with direction for further proceedings in accordance with the views expressed in the opinion of this court."

The Baer Brothers Co. then brought the case here by writ of error.

*Mr. William B. Harrison* for plaintiff in error.

*Mr. E. N. Clark*, with whom *Mr. Joel F. Vaile* and *Mr. J. G. McMurry* were on the brief, for defendant in error:

Assuming that the Interstate Commerce Commission had jurisdiction over the matters in controversy, the Commission did not comply with the statutes in making

the order which the court is now asked to enforce. The rate in question was an established rate. It is immaterial in this case whether the rate had been established or not. The plaintiff is estopped to deny in this court that the rate was established. At the time the complaint was filed with the Interstate Commerce Commission, the law required the Commission to prescribe the maximum rate to be applied in future. The purpose and plan of interstate commerce legislation cannot be accomplished without imposing upon the Commission the primary duty of fixing the maximum rate.

There is nothing in the act that requires that the maximum to be established by the Commission for the future shall coincide with the reasonable rate found for the purpose of reparation.

The Commission could not have been embarrassed in this case in prescribing a maximum rate for the future.

The Interstate Commerce Commission had no jurisdiction over the rate of the Denver and Rio Grande Railroad Company applicable from Pueblo to Leadville under the circumstances detailed in evidence. The shipments in question, so far as they moved over the railroad of defendant, were not within the Interstate Commerce acts. The Commission had no power to deal with defendant's local rate from Pueblo to Leadville.

In support of these contentions, see *Balt. & Ohio R. R. v. Pitcairn Coal Co.*, 215 U. S. 481; *Chi., R. I. & Pac. Ry. Co. v. Inter. Com. Comm.*, 171 Fed. Rep. 680; *Denver & R. G. Co. v. Inter. Com. Comm.*, 195 Fed. Rep. 968; *Gibbons v. Ogden*, 9 Wheat. 1; *Gulf, Col. & S. F. R. Co. v. Texas*, 204 U. S. 403; *Inter. Com. Comm. v. Ill. Cen. R. R. Co.*, 215 U. S. 452; *Inter. Com. Comm. v. Lake Shore Ry. Co.*, 134 Fed. Rep. 942; *Inter. Com. Comm. v. Ch., R. I. & Pac. Ry. Co.*, 218 U. S. 88; *Langdon &c. v. Penna. R. Co.*, 186 Fed. Rep. 237; *Phila. & R. Ry. Co. v. Inter. Com. Comm.*, 174 Fed. Rep. 687; *Robinson v. Balt. & Ohio R. R. Co.*, 222

U. S. 506; *So. Pac. Co.* v. *Col. Fuel Co.*, 101 Fed. Rep. 779; *So. Pac. Co.* v. *Inter. Com. Comm.*, 200 U. S. 536; *Tex. & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *The Floyd Acceptances*, 7 Wall. 666.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

In proceedings before the Commerce Commission the plaintiff secured an order requiring the defendant to pay it $3,438.27 as reparation for unreasonable freight-rates charged and collected, the fixing of a new and just rate being left for future decision. The carrier failed to make the payment required and the plaintiff thereupon brought suit and recovered judgment for the sum awarded together with interest and attorneys' fees. This judgment was reversed by the Circuit Court of Appeals, which held that the order was void on its face and could not be the basis of a recovery for the reason that, while reparation had been awarded on the ground that the old rate was unreasonable, the Commission had not fixed a new and just rate for the future.

1. That the two subjects of Reparation and Rates may be dealt with in one order is undoubtedly true. *Texas & Pac. Ry.* v. *Abilene*, 204 U. S. 426, 446. *Robinson* v. *Balt. & Ohio R. R.*, 222 U. S. 506, 509. But awarding reparation for the past and fixing rates for the future involve the determination of matters essentially different. One is in its nature private and the other public. One is made by the Commission in its *quasi*-judicial capacity to measure past injuries sustained by a private shipper; the other, in its *quasi*-legislative capacity, to prevent future injury to the public. But testimony showing the unreasonableness of a past rate may also furnish information on which to fix a reasonable future rate and both subjects can be, and often are, disposed of by the same order. This,

however, is not necessarily so. Indeed, under the original Commerce Act, the two matters could not possibly be combined in a single order for the reason that, while at that time the Commission could order the carrier to desist from unreasonable practices and award damages, it could not fix rates. This brought about an anomalous state of affairs. For if the shipper obtained his order of reparation because of unreasonable charges which the Railroad Company was ordered to discontinue, a slightly different, but still unreasonable, rate might be put in for the future, which the shipper had to pay and again institute proceedings for reparation. Section 15, act of February 4, 1887, c. 104, 24 Stat. 379, 384.

2. This situation was dealt with by the Hepburn Act, which, in addition to the existing power to make reparation, conferred upon the Commission the new power to make rates for the future. But the two matters were treated as different subjects and were dealt with in separate sections. Section 4 conferred the power of making rates. Section 5 gave the Commission power to make reparation orders. Sections 4, 5, act of June 29, 1906, c. 3591, 34 Stat. 584, 589, 590. Not only were the two functions separately treated, but an analysis of the act shows that there is no such necessary connection between them as to make the *quasi*-judicial order for reparation depend for its validity upon being joined with a *quasi*-legislative order fixing rates. Persons entitled to one may have no interest in the other. Persons interested in both may be entitled to reparation and not to a new rate; or to a new rate and not to reparation. For example,—§ 13 (24 Stat. 383) permits "any mercantile, agricultural or manufacturing society or any body politic or municipal organization to make complaints against the carrier." On the application of such bodies, old rates might be declared unjust and new rates established, but, of course, no reparation would be given, for the reason that such

complainants were not shippers and, therefore, not entitled to an award of pecuniary damages. *Cf. Louisville &c. R. R. v. Int. Com. Comm.*, 227 U. S. 88. Then, too, there are cases in which a rate, reasonable when made, becomes unreasonable as the result of a gradual change in conditions, so that no reparation is ordered even though a new rate be established for the future. *Anadarko Cotton Oil Co. v. Atchison &c. Ry.*, 20 I. C. C. 43. Conversely, there may be cases where what was an unreasonable rate in the past is found to be reasonable at the date of the hearing. In such a case reparation would be awarded for past unreasonable charges collected but no new rate would be established for the future.

3. It may, however, be said that even in such a case, the order while condemning the rate for the past, should contain a provision validating it for the future. But while this consideration might show that it was erroneous not to name the new rate, it would not follow that the order awarding reparation was void. The Hepburn Act treats the two subjects as related, but independent. The grounds of complaint may be joint or separate, and the very fact that they may sometimes be separate shows that the presence of both is not jurisdictional and that the absence of a provision for one need not operate to invalidate an order as to the other.

This conclusion is strengthened by considering the hardships that would result from nullifying a reparation order for error in omitting a provision for the future rate. It would punish the shipper for the failure of the Commission. It would deprive him of his award of damages for his private injury, because of the Commission's omission to make a rate for the benefit of the public. The shipper might or might not intend to remain in business. He might or he might not be interested in future rates. He might have been able to prove unreasonableness as to the past without being able to furnish evidence as to what

would be reasonable for the future. Or, the Commission might be in position to say with certainty that the rates had been unreasonable and award reparation accordingly, but it might require a protracted and lengthy hearing to establish what would be just for the future. To make the shipper wait on such a finding and deprive him of his present right to reparation, until the determination of an independent question, would work a hardship not contemplated by the act and not required by any of its provisions.

The present case illustrates some of these features. The plaintiff's petition asked for reparation and that the Commission would establish just rates. On the hearing it appeared that there was no through route or joint rate and that the established local charge of one of the carriers was just while that of the other had not been established or included in a filed tariff and was also unjust. The evidence was sufficient to sustain a finding of damages against such carrier, but it did not show how the through rate should be divided between the two companies, one of which hauled 923 miles and the other 160 miles. The carriers did not ask for an extension of the time within which the reparation should be paid. The fact that they were given an opportunity to agree on a through rate and how it should be divided, ought not to deprive plaintiff of its rights to damages for the past, under a reparation order which could not, by any possibility, be changed by any subsequent finding as to rates for the future.

The Report and Order gave the plaintiff no preference over other shippers, since they showed that 15 cents of the rate charged by the Denver & Rio Grande was unreasonable. If such a finding of unreasonableness was not sufficiently general to inure to the benefit of all other shippers, they could, on application, have secured such a modification as to enable them to maintain a suit for the recovery of damages for unjust charges and collections in the past.

So far as the future operation of the order was concerned, all shippers were left in the same position, where, from the necessity of the case, the old rate had to be paid until the time had elapsed within which a new and just through rate could be put into effect. But however desirable it may have been to deal with the entire matter at one time, the joinder of the two subjects was not jurisdictional. There was no such necessary connection between the two as to make the order of reparation void because of the absence of a concurrent provision establishing a rate for the future.

This conclusion makes it necessary to consider what judgment should have been entered by the Circuit Court of Appeals (*Baker* v. *Warner*, 231 U. S. 588). That necessitates an examination of the other assignments of error relied on by the Railroad Company.

4. The Denver & Rio Grande claimed in the record in the Court of Appeals that the order was void on its face for the reason that the Commission was without jurisdiction to pass upon the reasonableness of the rate from Pueblo, Colorado, to Leadville, Colorado. But while there was no through-rate and no through-route there was in fact, a through shipment from St. Louis, Missouri, to Leadville, Colorado. Its interstate character could not be destroyed by ignoring the points of origin and destination, separating the rate into its component parts and by charging local rates and issuing local waybills, attempting to convert an interstate shipment into intrastate transportation.

For "when goods shipped . . . from a point in one State to a point in another, are received in transit by a state common carrier, under a conventional division of the charges, such carrier must be deemed to have subjected its road to an arrangement for a continuous carriage or shipment within the meaning of the Act to Regulate Commerce." *Cincinnati, N. O. & Tex. Pac. Ry.* v. *Int.*

*Com. Comm.*, 162 U. S. 184, 193. This common arrangement does not depend upon the establishment of a through-route or the issue and recognition of a through bill of lading, but may be otherwise manifested. *Ibid.*

That there was a common arrangement between the two carriers here was shown by the long-continued course in dealing, and the division of the freight, with the knowledge that it had been paid as compensation for the single haul. If there had been a failure on the part of one of the carriers to file the tariffs, that did not defeat the jurisdiction of the Commission to award reparation against that same carrier, when it was shown that its unreasonable charge of 45 cents per cwt. formed a part of the total rate of 90 cents per cwt. actually paid by the Baer Company.

5. The dismissal of the suit brought in 1906, for the recovery of damages for collecting unreasonable freight-rates, was not a bar to this proceeding for the reason that a voluntary dismissal of an action at law is in the nature of a non-suit and does not operate as a judgment on the merits. *Haldeman* v. *United States*, 91 U. S. 584; *Jacobs* v. *Marks*, 182 U. S. 583, 591.

There were other assignments of error in the Circuit Court of Appeals, but as they are not discussed in the brief for the Railroad Company, they may be treated as abandoned here.

*The judgment of the Circuit Court of Appeals is reversed and that of the Circuit Court affirmed.*