MORGAN CO. v. GREAT NORTHERN R. CO.

(District Court, N. D. Illinois, E. D. June 30, 1919.)

No. 10369.

COMMERCE ☞88—ORDER FIXING RATES NOT EQUIVALENT TO FINDING THAT PREVIOUS RATES WERE EXCESSIVE.

An order of the Interstate Commerce Commission, fixing rates for the future, is not the equivalent of a finding that rates previously charged and collected were unreasonable and unjust, which will support a judgment awarding reparation to a shipper; but there must be a specific finding as to the reasonableness of the rates challenged, and proceedings for that purpose, and for fixing future rates, are, or may be, entirely separate and distinct.

At Law. Action by the Morgan Company against the Great Northern Railroad Company. Judgment for plaintiff.

John S. Burchmore, of Chicago, Ill., for plaintiff.

John F. Finerty, of St. Paul, Minn., and Charles A. Williams, of Chicago, Ill., for defendant.

CARPENTER, District Judge. It will be unnecessary to make a statement of facts in this case, because they are all contained in the stipulation of the parties. Moreover, the pertinent orders of the Interstate Commerce Commission are all detailed therein, and extended quotations therefrom will not be made.

It is well settled that courts are without primary jurisdiction to award damages for the exaction of excessive interstate freight rates, when such rates have been duly filed and published as required by law. Such published

rates, fares, and charges are presumed to be reasonable until set aside by the Interstate Commerce Commission. T. & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075.

It is therefore important to determine whether or not the specific rates and charges published, assessed and collected by the defendants on the shipments in question from November 1, 1907, to October 15, 1908, have been found unjust and unreasonable—therefore unlawful—by the Interstate Commerce Commission.

The following statement of rates from the points involved will be helpful:

Statement of Rates from Points of Origin to Oshkosh, Wisconsin.

| From | Rates in Effect Prior to Nov. 1, 1907. | Rate Established by the Carriers Nov. 1, 1907, Which Applied on Shipments Involved. | Rates Found Just and Reasonable by Commission in Cases 1327, 1329, 1335, 14 I. C. C. 40, Coast Cases. | Rates Established for the Future by the Commission in Case No. 1384, 14 I. C. C. 50, Potlatch Case. |
|---|---|---|---|---|
| Warland | .50 | .54 | .55 | .52 |
| Morse | .50 | .55 | .55 | .52 |
| Deer Park | .50 | .56 | .55 | .52 |
| Dart | .50 | .56 | .55 | .52 |
| Keil | .50 | .56½ | .55 | .52 |
| Colville | .50 | .56½ | .55 | .52 |
| Addy | .50 | .56½ | .55 | .52 |
| Kulzer | .50 | .56½ | .55 | .52 |
| Chewelah | .50 | .56½ | .55 | .52 |
| Godfrey | .57½ | .57½ | .62½ | .53 |
| Northport | .57½ | .57½ | .62½ | .53 |
| Stone Spur | .57½ | .57½ | .62½ | .53 |

In the Coast Cases the Interstate Commerce Commission had before it two separate and distinct issues:

First. The question of awarding reparation for the past, which involved the determination of whether rates in effect between November 1, 1907, and the date of its order, were just and reasonable.

Second. The establishing of rates for the future.

The rates from points of origin above mentioned to Oshkosh, Wis., were under consideration in the Coast Cases. In passing upon the first issue, viz. whether or not the complainants were entitled to reparation between the points here involved, the Commission stated (14 Interst. Com. Com'n R. 40):

"It is also the opinion of the commission that the rates now in effect from said points of origin to points in territory east of the territory above described * * * are unreasonable and unjust to the extent that they exceed 5 cents per 100 pounds above the rates in effect October 31, 1907. This increase of 5 cents per 100 pounds over the old rates must be in conformity with the differentials prescribed by the commission in" the Potlatch Case. 14 Interst. Com. Comn. R. 40.

And reparation was ordered by the commission on the basis of the difference between rates in excess of 5 cents above rates in effect October 31, 1907. In other words, there was a definite and specific

finding by the Interstate Commerce Commission that rates, not in excess of 5 cents per 100 pounds above the rates in effect on October 31, 1907, were just and reasonable rates. Rates above these, of course, would be unjust and unreasonable, and therefore unlawful.

In passing on the second issue involved from the points of origin shown in the above statement, the Commission in the Coast Cases stated (14 Interst. Com. Com'n R. 40):

"This increase of 5 cents per 100 pounds over the old rates must be in conformity with the differentials prescribed by the commission in case No. 1348 [Potlatch Case]."

In other words, the decisions and orders of the Interstate Commerce Commission in the Coast Cases merely held rates in excess of 5 cents per 100 pounds above rates in effect October 31, 1907, unjust and unreasonable, and established rates for the future. The measure of rates for the future should not exceed 5 cents per 100 pounds above rates in effect October 31, 1907, and should be established in conformity with the differentials prescribed in case No. 1348.

It will be noted that, prior to the decision in the Potlatch Case, the rates from Coast points as against rates from the Spokane group were not on a fixed differential basis. This differential basis was first established by the commission in the Potlatch Case, and was to be observed for the future.

## Potlatch Case.

Prior to November 1, 1907, the rates from the Coast, Spokane, and Montana-Oregon groups to Oshkosh, Wis., were the same. In the establishment of new rates on November 1, 1907, the carriers increased the rates from the Coast 10 cents per 100 pounds, increasing the rates from the points in question located in the Spokane group from 4 to 7½ cents. The Potlatch Case dealt solely with the question of rate relationship as between these two points of origin, and the complaint asked for a differential of 10 cents, and only the question of difference between the rates at points of origin were in issue; the justness and reasonableness of the specific rates not being decided. In this case the commission found only that the rates from Spokane should bear a certain relationship to the rates from the Coast, and that for the future rates from the Spokane group should be 3 cents under the rates from the Coast group. The order of the commission in this case would be complied with, so long as rates were established and maintained on such differential basis, regardless of the measure or amount of the actual rates from each group.

The only specific finding of the Interstate Commerce Commission of unjust and unreasonable rates between November 1, 1907, and October 15, 1908, upon which a court would be authorized in entering a judgment based upon a claim for reparation, is the order of the commission in the Coast Cases specifically finding rates in excess of 5 cents per 100 pounds above the rates in effect October 31, 1907, unjust, and unreasonable, and therefore unlawful.

It is clear that the commission in the Potlatch Case only had before it the question of establishing a just and reasonable rate relationship

for the future; that being the only question in issue, and reparation not being asked, it would have no occasion to inquire into the reasonableness of such rate relationship for the past, and such finding would not be retroactive.

In addition to this, an injunction was secured by the carriers in the United States courts on October 13, 1910, enjoining permanently the enforcement of the commission's orders in all four dockets, including, of course, the Potlatch Case. On appeal by the Interstate Commerce Commission to the United States Supreme Court, the injunction was finally dissolved on January 9, 1912. See Interstate Commerce Commission v. Union Pacific Railway Co. et al., 222 U. S. 541, 32 Sup. Ct. 108, 56 L. Ed. 308. So far as appears from that decision, no error was assigned by the shippers that the order of the Interstate Commerce Commission with reference to differentials for the future on shipments from the Spokane group was wrong. Clearly they could have insisted on the record that they were entitled to reparation, or, at least, that the Interstate Commerce Commission's report and finding should be made retroactive, and not be for the future alone.

The parties to that action clearly would not be in a position to demand reparation for the past, and, to my mind, a shipper who is not a party to the litigation cannot have greater rights.

The mere fact that the commission established rates for the future creates no presumption that such rates were unreasonable in the past.

In the case of Baer Brothers Mercantile Co. v. Denver & R. G. R. Co., 233 U. S. 479, 34 Sup. Ct. 641, 58 L. Ed. 1055, which was an action to recover reparation based upon an order of the Interstate Commerce Commission, in the proceeding before the commission the plaintiff secured an order of reparation based on unreasonable freight rates charged and collected, and the fixing of a new and just rate was left for future decision. The railroad company contended that the order was void, and could not be the basis of a recovery, for the reason that reparation had been awarded on the ground that the old rate was unreasonable, and the commission had not fixed a new and just rate for the future. The Supreme Court, in holding that the order was not void, and that the commission might order reparation, and not establish a rate for the future, stated:

"Awarding reparation for the past and fixing rates for the future involved the determination of matters essentially different. * * * Testimony showing the unreasonableness of a past rate may also furnish information on which to fix a reasonable future rate, and both subjects can be, and often are, disposed of by the same order. This, however, is not necessarily so. Indeed, under the original Commerce Act, the two matters could not possibly be combined in a single order. * * * This situation was dealt with by the Hepburn Act, which, in addition to the existing power to make reparation, conferred upon the commission the new power to make rates for the future. But the two matters were treated as different subjects and were dealt with in separate sections. * * * *Then, too, there are cases in which a rate, reasonable when made, becomes unreasonable as the result of a gradual change in conditions, so that no reparation is ordered, even though a new rate be established for the future.* * * * Conversely, there may be cases where what

was an unreasonable rate in the past is found to be reasonable at the date of the hearing. In such a case reparation would be awarded for past unreasonable charges collected, but no new rate would be established for the future. * * * The grounds of complaint may be joint or separate, and the very fact that they may sometimes be separate shows that the presence of both is not jurisdictional and that the absence of a provision for one need not operate to invalidate an order as to the other. * * * There was no such necessary connection between the two as to make the order of reparation void because of the absence of a concurrent provision establishing the rate for the future."

The Interstate Commerce Commission in the case of In re Wool, Hides and Pelts, 25 Interst. Com. Com'n R. 675, in commenting on the duty of the commission to order reparation in a case where a rate is held to be unreasonable, stated:

"The statute provides that no order for reparation shall be made by the commission, unless claim is filed * * * within the two years from the time the cause of action accrues, and it seems to be assumed in many quarters that, whenever the commission holds a * * * rate to be unreasonable, it will, as a matter of course, award reparation upon the basis of the rate found to be reasonable as to all payments within the two-year limitation. *This is by no means so, since it does not of necessity follow that, because a rate is found unreasonable upon a given date, it has been unreasonable during the two years preceding,* and reparation can only be granted where it is found that the charge was unreasonable when paid. * * * *It may well be that the rates were entirely reasonable when established, although unreasonable when the opinion of the commission was promulgated.* * * * In every case like this the commission must fix the point of time at which the rate becomes unreasonable, must determine when shippers were entitled, and when carriers ought to have established the rate found reasonable. In the present instance * * * we are not satisfied that the complainant has shown that the rates as stated in the tariffs of the carriers were unreasonable up to the date of our decision; but we do hold * * * from that date the rates * * * suggested by the commission have been reasonable, and the rates * * * of the carriers have been unreasonable and unlawful to the extent that they have varied from these, from which it follows that reparation will be awarded on the basis of the rates found reasonable by the commission on March 21, 1912."

In the case of Penrod Walnut & Veneer Co. v. C., B. & Q. R. R., 15 Interst. Com. Com'n R. 326, Commissioner Prouty, in denying complainant's application for reparation, stated:

"It must not be understood that, whenever this commission reduces a rate, it necessarily follows that it will award reparation upon the basis of the rates established for two years preceding the filing of the petition. *There is no conclusive presumption that a rate reasonable to-day was reasonable a year before, or a day before, since reasonable rates vary from time to time, and some point of division must be found.* Where, therefore, rates have been established and maintained by the carriers in good faith, especially where they have been long in effect and acquiesced in by the shippers without protest, this commission will not award reparation, even though the rate is reduced, unless it clearly appears that the rates paid in the past have been excessive."

Roberts, in his work on Federal Liability of Carriers (volume 1, p. 500), states:

"In every case where reparation is demanded, the commission must fix the point of time when the rate became unreasonable, must determine when shippers were entitled to, and when carriers ought to have established the rate found reasonable. * * * A rate may be reasonable at one period of

existence, and at a later period unreasonable, because of changed conditions and circumstances."

The Potlatch Case was submitted to the commission April 4, 1908, decided June 2, 1908, ordered to become effective August 15, 1908, which was extended to October 15, 1908. It may be argued that from the date that the hearing was closed before the Interstate Commerce Commission all rates not in strict compliance with the order subsequently issued were unlawful. I. C. Com. v. Louisville & Nashville R. R. Co., 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431. However, I do not believe that this argument is sound in this particular case, for the reason that the commission was dealing solely with the establishment of a rate relationship for the future, and it is to be presumed that, if the circumstances and conditions as shown by the evidence warranted the commission in establishing the relationship at an earlier date than provided for by its order, it would have done so.

Plaintiff is entitled to reparation to the extent that the rates charged exceed 5 cents per 100 pounds above rates in effect October 31, 1907. Before judgment can be entered, computations must be made by counsel and submitted to the court.

Counsel will make such computations upon the basis of the views herein expressed, and present them, so far as possible, in the form of an agreed stipulation of facts.