**PHOENIX INSURANCE COMPANY, Appellee,**

v.

**MONON RAILROAD, Appellant.**

**No. 20396.**

United States Court of Appeals, Eighth Circuit.

March 11, 1971.

A. James Dickinson, Stringer, Donnelly, Allen & Sharood, St. Paul, Minn., for appellant.

H. A. Cousineau, Jr., Mordaunt, Walstad, Cousineau & McGuire, Minneapolis, Minn., for appellee.

Before GIBSON and BRIGHT, Circuit Judges, and McMANUS, Chief District Judge.

BRIGHT, Circuit Judge.

Plaintiff Phoenix Insurance Company (Phoenix) brought an action against the defendant Monon Railroad (Monon) for the loss of 165 cases of liquor which disappeared from a trailer-load shipment originating with the Calvert Distillers Company in Louisville, Kentucky, and destined for Old Peoria Company, Inc. (Old Peoria) in Minneapolis, Minnesota. Plaintiff Phoenix, Old Peoria's insurer, paid for the latter's loss and brought this action as its subrogee. The district court, Judge Larson, held the railroad responsible for the value of the lost merchandise. Monon appeals from the judgment entered against it. We affirm.

Monon operates its rail lines between Louisville and Chicago, Illinois. It contends that there is no proof that the loss occurred on its line and that it bears no responsibility beyond its Chicago terminal. As part of its defense, Monon asserts that it did not furnish rail transportation as an initiating carrier on a through bill of lading to Minneapolis.

The transportation in the instant case commenced at Calvert's distillery in Louisville, Kentucky. There, the shipper loaded 949 cases of its liquor into a trailer unit furnished by Monon and carried by Monon's contract draymen from the distillery to its railroad yards in Louisville. At that point, the defendant railroad placed the loaded trailer, piggyback style, on a flatcar. After sealing the trailer, Monon provided rail transportation for the cargo from Louisville to Monon's Chicago rail yards, which are located at Hammond, Indiana. Monon then removed the trailer from the flatcar, and following instructions from the consignee's representative, provided motor freight transportation of this trailer to the Milwaukee Road [1] at the latter's Chicago rail yards, located in Bensonville, Illinois. The Milwaukee Road furnished further railway transportation to Minneapolis. At this point, Old Peoria, as consignee, accepted delivery of the trailer. Upon opening the unit, the consignee discovered the shortage, although the original seals placed on the trailer by Monon remained intact when delivered to Old Peoria.

The bill of lading executed by Monon, in addition to describing the trailer and

---

1. Chicago, Milwaukee, St. Paul & Pacific Railway.

its contents and showing Calvert Distillers as shipper, bore the words:

Consigned to OLD PEORIA COMPANY INCORPORATED
701 STINSON BOULEVARD

Destination MINNEAPOLIS State MINN

After the legend "Route", the face of the bill bore a typewritten notation: "MONON—PLAN 2—CHICAGO C/O ITOFCA." The designation "ITOFCA" refers to Illinois Trailer on Flat Car Association, a non-profit shippers association which directs and coordinates trailer shipments by rail transportation so as to achieve savings in freight costs. The Milwaukee Road issued ITOFCA a separate bill of lading to cover the terms of transportation between Chicago and Minneapolis. ITOFCA, on separate bills, paid separate rail charges to each of the two carriers.

The crucial question in this case is whether Monon issued a through bill of lading, that is, one providing for transportation from Louisville to the consignee's destination at Minneapolis. If so, Monon, as the initiating carrier, is liable for the loss sustained anywhere en route pursuant to the provisions of the Carmack Amendment, 49 U.S.C. § 20(11).[2]

In support of its contention that the transportation between Louisville and Minneapolis was not on a through bill, Monon refers to the following facts: (1) the Milwaukee Road issued a separate bill of lading to ITOFCA covering a different category of service which it agreed to provide between Chicago and Minneapolis; (2) each carrier separately billed ITOFCA for the service provided; (3) the initial transportation consisting of two trailers placed on one flatcar at Louisville was broken at Chicago; (4) Monon provided Plan 2 piggyback service, which represents door-to-door services furnished by the carrier, including trucking and rail transportation, but the Milwaukee Road furnished a different plan, ramp-to-ramp only, under Plan 3;[3] and (5) under through service, Monon would provide continuous rail movement over its lines or those of connecting carriers between Louisville and Minneapolis.

The district court deemed these circumstances to be immaterial in the light of the precise terms of the bill of lading, entitled "STRAIGHT BILL OF LADING", consigning the shipment to Old Peoria at Minneapolis, Minnesota. In an unreported opinion, Judge Larson commented on these contentions as follows:

Plaintiff's exhibit No. 2, the original bill of lading, manifests on its face that the destination of the shipment, initially transported by Monon, is Minneapolis. Because Monon does not have tracks to the Twin Cities there was no other alternative than for Monon to relinquish carriage of the trailer in Chicago. It would seem to this Court that a bill of lading with the ultimate destination noted on it, pursuant to which the cargo traveled, is a through bill within the meaning

---

2. The Carmack Amendment provides, in pertinent part:

"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass

within the United States * * * *when transported on a through bill of lading*, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed. * * * *" 49 U.S. C. § 20(11) (Emphasis added.) This statute places the same obligation upon the delivering carrier.

3. For an explanation of various piggyback plans, see American Truck Assns. v. Atchison, T. & S. F. Ry. Co., 387 U.S. 397, 403, 87 S.Ct. 1608, 18 L.Ed.2d 847 (1967).

of 49 U.S.C. § 20 par. (11), regardless of the routing employed.

We agree with the district court's analysis on this issue. Although ITOFCA represents only shippers, the notation in Monon's bill of lading made it clear to the carrier that ITOFCA would provide rerouting and consolidation services on behalf of the shipper. The railroads in the instant case provided one continuous shipment from origin to destination, although utilizing truck transportation pursuant to ITOFCA's instructions in the Chicago area. Monon was well aware of the nature of ITOFCA's services, which consisted of making arrangements for the shipment in question to be joined with another trailer for continuance of the journey to Minneapolis upon a second flatcar at the best available freight rate. In fact, Monon's representative testified that "99 per cent of the whiskey shipped out of Louisville for the account of ITOFCA, or to ITOFCA at Chicago, terminates in the Minneapolis-St. Paul area."

■ Regardless of the routing provided therein, a through bill of lading is one with the final delivery destination of the goods noted thereon, although transportation of the goods may extend over the lines of connecting carriers. Lifschultz v. United States, 144 F.Supp. 606, 612 (S.D.N.Y.1956). A carrier or transportation agency covered by 49 U.S.C. § 20(11) is required to issue a through bill of lading. St. Louis, Iron Mountain & Southern Railway Co. v. Starbird, 243 U.S. 592, 604, 37 S.Ct. 462, 61 L.Ed. 917 (1917); Northern Pacific Railway Co. v. Wall, 241 U.S. 87, 92, 36 S.Ct. 493, 60 L.Ed. 905 (1916). In Missouri, Kans. & Tex. Ry. Co. of Texas v. Ward, 244 U.S. 383, 37 S.Ct. 617, 61 L.Ed. 1213 (1917), the Supreme Court noted that the Carmack Amendment was intended "to create in the initial carrier unity of responsibility for the transportation to destination." *Id.* at 386, 37 S.

Ct. at 619. The Court later noted in Reider v. Thompson, 339 U.S. 113, 70 S.Ct. 499, 94 L.Ed. 698 (1950), that the purpose of the Carmack Amendment was "to relieve shippers from the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Id.* at 119, 70 S.Ct. at 502. Applying the rationale of these cases to the instant circumstances, we conclude that a shipment piggyback, which envisions part rail and part motor carrier transportation to a consignee at a destination named in the bill of lading, constitutes a through shipment under a through bill of lading in spite of the fact that motor transportation requested by the shipper provides for interchange of the cargo between the initiating and delivering carriers.

■ Special arrangements made between railroad and shipper concerning rates, routings or charges for service will not bar a shipper or consignee from relying upon the provisions of the Carmack Amendment for proof of its claim against the carrier. See, e.g., Mexican Light & Power Co. v. Tex. Mex. R. Co., 331 U.S. 731, 734, 67 S.Ct. 1440, 91 L.Ed. 1779 (1947) (issuance of second bill of lading); Baer Bros. Mercantile Co. v. Denver & R. G. R. R., 233 U.S. 479, 34 S.Ct. 641, 58 L.Ed. 1055 (1914) (separate billings by initiating and delivering carriers); Norfolk & W. Ry. Co. v. Dixie Tobacco Co., 228 U.S. 593, 33 S.Ct. 609, 57 L.Ed. 980 (1913) (shipper's selection of routing).[4]

■ The circumstances in the instant case fall squarely within the spirit and letter of the Carmack Amendment which reconciles the carrier's interest in using varied and connecting forms of trans-shipment and the shipper's resulting inability to determine exactly where his freight was lost or damaged by placing liability for loss of cargo occurring anywhere en route upon the initiating or

---

4. For a general discussion of the application of the Carmack Amendment to arrangements made between carriers offering different methods of carrying cargo to destination, see United States v. Mississippi Valley Barge Line Co., 285 F.2d 381 (8th Cir. 1960).

delivering carrier. Accordingly, the trial court correctly held plaintiff need not prove the occurrence of the loss while in Monon's possession. Minneapolis, St. P. & S. S. M. R. Co. v. Metal-Matic, Inc., 323 F.2d 903, 905 (8th Cir. 1963).

Affirmed.