**WOODHOUSE, DRAKE & CAREY, INC., a corporation, Plaintiff-Appellant,**

v.

**M/V RIGHTEOUS, her engines, tackles, furnishings, etc., in Rem Righteous Navigation, Inc., a foreign corporation, her owners, Atlantic Lines & Navigation Co., Inc., a foreign corporation, Armement Deppe, Naamloze Vennootschap, d/b/a Armement Deppe, a foreign corporation, Armement Deppe, Naamloze Vennootschap, a foreign corporation, et al., Defendants-Appellees.**

No. 81–5348.

United States Court of Appeals, Eleventh Circuit.

Aug. 4, 1983.

John B. Culp, Jr., Jacksonville, Fla., for plaintiff-appellant.

Toole, Taylor, Moseley & Joyner, Robert E. Warren, Jacksonville, Fla., for defendants-appellees.

Before HENDERSON and CLARK, Circuit Judges, and JONES, Senior Circuit Judge.

CLARK, Circuit Judge:

Appellant Woodhouse, Drake & Carey, Inc. (Woodhouse) purchased "on board" bills of lading issued by appellee Navale et Commerciale Havraise Penninsulaire (Navale), a foreign corporation. Navale had issued the bills with specific exceptions to the good order and condition of the cargo covered, 10,076 bags of coffee. Navale carried the coffee to Europe where the coffee came under the control of Armement Deppe (Deppe), a foreign corporation. From Europe, the coffee was carried to Jacksonville by the M/V Righteous, chartered and operated by Atlantic Lines & Navigation Co. (Atlantic Lines). At delivery in Jacksonville, the coffee showed damage, for which Woodhouse sued Navale, Deppe, Atlantic Lines, the Righteous, and Righteous Navigation, Inc. At trial, the district court dismissed the Righteous and Righteous Navi-

gation, Inc., and held Atlantic Lines, which did not appear to defend plaintiff's claims for damages, liable for $31,853.41. This sum covered damage to the cargo allegedly occurring between Antwerp and Jacksonville. As to Navale and Deppe, the court found that Woodhouse had not made a prima facie case that damage occurred prior to the cargo's carriage from Antwerp. Nor did the court hold Navale liable as a through carrier for damage that occurred between Antwerp and Jacksonville. Woodhouse appeals these results. Further, Woodhouse challenges the district court's determination that dock receipts for the coffee—which were written prior to the issuance of the "on board" bills of lading—were not pertinent to this case. We affirm in part and reverse and remand in part.

In August and September 1978, appellee Navale received the 10,076 bags of coffee for shipment. Each of the nine bills of lading which Navale issued for the coffee covered a portion of the shipment and each was consigned to the order of the shipper. Each bill listed exceptions to the good order and condition of the cargo; these were written in French, as was most of the rest of each bill.

Most of the bills originally designated three ports as options for final destination: Le Havre, New York, and Rotterdam (one bill designated only Le Havre). However, at some time not indicated by the record, each bill was altered to show Jacksonville as the final destination. Each bill bore such alteration on its face with the stamped notation "alteration approved," in English.

Navale carried the coffee to Le Havre, from which the coffee was carried overland to Antwerp. As the district court correctly noted, the record contains no evidence as to the circumstances of the transshipment to Antwerp. In Antwerp, Deppe prepared memorandum bills of lading corresponding to those issued by Navale. The Deppe memorandum bills, written in English, showed the same total number of bags, 10,076. The bills listed Deppe's exceptions

to the cargo's good order and condition in language differing from that of the Navale bills. These Deppe exceptions were "50 bags less in dispute," "98 bags stained," and 29 bags slack. The memorandum bills prepared by Deppe were not documents of title; each stated, "Cargo to be delivered against Original [Navale] B/L."

The M/V Righteous, chartered and operated by Atlantic Lines, carried the coffee from Antwerp to Jacksonville, where, at outturn, the shipment was 125 bags short, with 108 bags damaged and 199 slack. Thus, a comparison between the Deppe exceptions and the condition of the cargo upon delivery in Jacksonville shows that the cargo when delivered at Jacksonville was short an additional 75 bags and exhibited considerably more damage. The district court held Atlantic Lines, the connecting carrier between Antwerp and Jacksonville, liable for this damage.

■ In examining the decision of the district court, we first note the finding that Navale was a through carrier. The district court reasoned that the bills issued by Navale on their face are through bills because they show the approved alteration making Jacksonville the final destination. "Regardless of the routing therein, a through bill of lading is one with the final delivery destination of the goods noted thereon, although transportation of the goods may extend over the lines of connecting carriers." *Phoenix Insurance Co. v. Monon Railroad,* 438 F.2d 1403, 1406 (8th Cir.1971) (holding a railroad liable as a through carrier under the Carmack Amendment, 49 U.S.C. sec. 20(11)). The district court correctly concluded that Navale, as the bills' issuer, bore the burden to produce evidence that the bills did not prove it a through carrier. Navale did not produce such evidence, failing, for example, to show when and at whose request the alteration of destination was made. Thus, Navale failed to show that it had not itself authorized the alteration making it a through carrier to Jacksonville.

■ Although the district court concluded that Navale was a through carrier, it did not find Navale liable for later miscarriage by the connecting carrier Atlantic Lines, as settled law dictates. *Louis-Dreyfus v. Paterson Steamships,* 43 F.2d 824 (2d Cir. 1930); *Bristol Meyers v. S.S. Pioneer Land, et al.,* 1957 A.M.C. 50 (S.D.N.Y.1956); *cf.* U.C.C. sec. 7–302(1) (West 1979). Rather, the district court found only Atlantic Lines liable for damage occurring after it assumed control of the cargo in Antwerp. Although Navale is entitled to recover from Atlantic Lines, which bears ultimate liability, *cf.* U.C.C. sec. 7–302(3), Navale is liable to appellant as a through carrier. We remand for the district court's determination de novo the matter of the amount of Navale's liability as a through carrier for any damage occurring between Antwerp and Jacksonville and its right to recover from the connecting carrier.

However, as we shall explain further below, the district court did correctly determine that appellant failed to prove that damage greater than that noted in the Navale bills had occurred by the time of the preparation of the Deppe bills in Antwerp. Furthermore, appellant is estopped from asserting that the coffee, upon receipt by Navale in Madagascar, had not been damaged to the extent noted in the Navale bills.

Navale stated that its exceptions, which were written in French, noted that 283 of the bags of coffee were "ripped, torn, with holes, or open-ended." Defendants' Post-Trial Memorandum, p. 6. Appellants acknowledged that the Navale exceptions noted 52 bags stained and 11 bags slack, but contended that 263 remaining exceptions were unclear. Plaintiff's Proposed Findings of Fact and Conclusions of Law, paragraph 12. Appellant attributed the lack of clarity of these remaining 263 exceptions to the fact that the exceptions described bags as "perdants," which translates from French as "losing," and which, appellant contended, is imprecise. Appellant's Brief at 14.

Nevertheless, the word "losing" is not so imprecise that the district court erred when it found that appellants failed to demonstrate Navale's liability for damage to the coffee occurring prior to Deppe's preparation of its memorandum bills. The exceptions stated in the Deppe bills, surveying the cargo after it left Navale's direct control, found 50 bags less than the original total and 98 stained. Although the exceptions in the two sets of bills do not overlap neatly, the district court found, "The Deppe bills would suggest that the cargo did not sustain damage in addition to that noted on the Navale bills." This is a reasonable finding of fact, given the equivalence of the two sets of exceptions.

Moreover, the exceptions in the Navale bills of lading are conclusive against appellant, the holder in due course. Appellant was on notice that the goods it purchased were damaged to the extent noted in the Navale exceptions.

This circuit, as well as others, has held consistently that the doctrine of estoppel is applicable to cases arising under the Carriage of Goods by Sea Act (46 U.S.C. sec. 1300 *et seq.*) and its predecessor, the Harter Act. *Cummins Sales & Service, Inc. v. London & Overseas Insurance Co.,* 476 F.2d 498, 501 (5th Cir.1973); *Portland Fish Co. v. States Steamship Co.,* 510 F.2d 628, 631 (9th Cir.1974); *Demsey & Associates v. S.S. Sea Star,* 461 F.2d 1009, 1015 (2d Cir.1972). These are cases in which a purchaser or a consignee's insurer sought to apply the doctrine of estoppel against a carrier in view of clean bills of lading. The carriers were thus estopped from showing pre-shipment damage. However, in *Portland Fish Co.,* the court did note the applicability of the doctrine in circumstances like the present ones:

> *Cogsa expressly provides the means by which carriers, in case of doubt concerning the goods, may protect themselves and avoid liability if they choose to do so.* Thus ... section 3 contains the provision "that no carrier, master, or agent of the carrier, shall be bound to state or show in the bill of lading any marks, number, quantity, or weight which he has reasonable ground for suspecting not accurately to represent goods actually received, or which he has no reasonable means of checking." [46 U.S.C.A. sec. 1303(3)(c) (1975)] Accordingly, under the Pomerene Act or, in the case of inbound bills, under the doctrine of estoppel, *such statements as the carrier does make become conclusive as against the holder in due course.*

510 F.2d at 633 (emphasis added). In *Groban v. S.S. Pegu,* 331 F.Supp. 883 (S.D.N.Y. 1971), *aff'd mem.,* 456 F.2d 685 (2d Cir. 1972), the purchaser accepted a bill stating specific exceptions to the good condition of the cargo, as in the present case, and thus was estopped from recovering for the damage which occurred prior to the bill's issuance and to which the exceptions referred.

The cargo involved in *Groban v. S.S. Pegu* was a load of tractor parts, as to which the bill of lading noted the following exceptions:

> Cargo loaded in Second hand condition 12 Case loaded broken [sic]

331 F.Supp. 886. More precisely, the tractor parts, which had not been used, were rusted because of their inadequate storage on the quay prior to shipment. The court wrote:

> The bill which they [the officers of the Pegu] prepared was claused to indicate the condition of a shipment of goods as it reasonably appeared to them. Groban had anticipated a shipment of new parts and *no reasonable reading of the claused bill could help but dispel this expectation.* Groban's real complaint is that the descriptive language of the exceptions is overly broad, rather than too narrow. *Surely, Groban cannot complain that it was not put on notice that the goods were not as represented by the seller,* because the exception was broad enough to cover a variety of defects in the shipment with-

out specifying or particularizing them in any detail.

\* \* \* \* \* \*

All that the carrier is required to do is to use such language by way of exception in the bill of lading as will reasonably indicate to the consignee in general terms the condition for the shipment in the light of the facts and circumstances.

331 F.Supp. at 889 (emphasis added). In the present case, the exceptions stated by the Navale bills of lading were sufficient to reasonably indicate to appellant that the coffee was in at least as bad a condition as that described in the Deppe bills.

Appellant also contends that the Navale exceptions may have overstated the extent of damage to the coffee when the shippers placed it in Navale's control in Madagascar. Thus, appellant asserts that Navale is liable for the damage that Deppe noted in its memorandum bills. The basis for this contention is appellant's suggestion that the language in the Navale bills (263 bags "losing") implies greater damage than the language in the Deppe bills ("50 bags less in dispute" and 11 bags slack). Appellant contends that Navale may have received the cargo in good order and condition without exception, and should be liable for damage occurring between this receipt and placement of the cargo into Deppe's control in Europe. Appellant contends that it needs Navale's dock receipts, which it hopes would show less damage to the coffee than Navale's bills show.

This argument is a further example of appellant's ignoring the doctrine of estoppel. Dock receipts establish the delivery of cargo into the custody of the carrier either as a bailee or a carrier. C. Powers, *A Practical Guide to Bills of Lading,* 165 (1966). Dock receipts most frequently are given upon the receipt of goods on a dock rather than on a vessel. Such documents are the basis on which "received for shipment" bills of lading are subsequently issued. *Practical Guide,* 165. Under a "received for shipment" bill of lading, the seller delivers his cargo at the wharf and is under no duty to see to the loading; the purchaser bears the risk. G. Gilmore and C.

Black, *The Law of Admiralty,* 106 (2d ed. 1975). However, with an "on board" bill of lading, like those issued by Navale, the purchaser bears no risk at least until the goods are on board. Appellant purchased Navale's "on board" bills of lading, having notice of the stated exceptions and bearing none of the risks that existed prior to the cargo's loading. Thus, the dock receipts for the coffee are not pertinent, no matter how nearly perfect they report the condition of the coffee.

The remaining issue is whether the district court was correct in finding that Deppe was not liable. The district court wrote, "The record is devoid of any evidence as to the circumstances resulting in damage to the cargo during the period that it was under the control of ... Deppe," and noted that the Deppe bills would suggest that the cargo did not sustain damage in addition to that noted by Navale. The survey of the cargo upon delivery indicates that the cargo, after it had left Deppe's control, did sustain damage while in Atlantic Lines' control. The court did not err in finding that Deppe was not liable.

AFFIRMED IN PART; REVERSED and REMANDED IN PART.