## ECKERSON et al. v. TANNEY et al.

### (District Court, S. D. New York.   July 25, 1916.)

1. PLEADING ⊜➡406(8)—MISJOINDER OF ACTIONS—WAIVER.

Under Code Civ. Proc. N. Y. § 488, specifying as grounds for objection the improper joinder of causes of action, and section 499, declaring that, if the objections specified in such section be not taken by demurrer or answer, they are waived, the failure to object by demurrer or answer to the joinder of three mortgages in one complaint seeking foreclosure is waived.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1370, 1371; Dec. Dig. ⊜➡406(8).]

2. MORTGAGES ⊜➡497(1)—FORECLOSURE—EFFECT.

A decree directing the sale of mortgaged lands for foreclosure does not, until deed is made, divest the mortgagee of his lien, or the mortgagor of his right to possession and profits.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1469, 1471, 1473; Dec. Dig. ⊜➡497(1).]

3. MORTGAGES ⊜➡585—FORECLOSURE—JUDGMENT—INVALIDITY.

Code Civ. Proc. N. Y. § 1626, provides for sale of mortgage lands on foreclosure, while section 1632 provides that a deed on foreclosure sale shall divest the mortgagor of his equity of redemption and the mortgagee of his lien. Mortgages were foreclosed, but no sale was had under the judgment, and 40 years later the mortgages were again foreclosed and sale made. *Held*, that as, until the deed is made in foreclosure, the mortgagor remains the owner of the equity of redemption, and as the deed, and not the foreclosure, destroys the mortgagee's lien, the second foreclosure was not void, and, not having been objected to, good title passed to a purchaser at the sale under the second judgment.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1683; Dec. Dig. ⊜➡585.]

4. PLEADING ⊜➡422—COMPLAINT—VERIFICATION.

Under Code Civ. Proc. N. Y. § 528, an objection that the complaint was not properly verified is cured by failure to object and does not invalidate the judgment.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1414–1417; Dec. Dig. ⊜➡422.]

5. MORTGAGES ⊜➡439—DEFECT OF PARTIES—EFFECT.

The failure to join in foreclosure proceedings one having an interest in the land does not invalidate the judgment, but merely renders it ineffective as to him.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1292–1297; Dec. Dig. ⊜➡439.]

6. JUDGMENT ⊜➡525—SCOPE OF JUDGMENT—RECITALS.

The judgment is contained, not in the recitals, but in the mandatory portions.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 568, 968, 982½; Dec. Dig. ⊜➡525.]

7. MORTGAGES ⊜➡494—JUDGMENT OF FORECLOSURE—VALIDITY—HARMLESS ERROR.

The complaint set out three several mortgages, praying foreclosure of all of them. The referee found the sum due on each mortgage separately, the aggregate of which was stated. The recitals of the judgment which decreed sale for foreclosure did not separate the amounts, and the land was sold for an amount insufficient to satisfy the first mortgage having priority. *Held* that, regardless of any defect in the judgment recitals which do not

constitute the judgment itself, such judgment was not void as failing to follow the complaint, and title passed to a purchaser at foreclosure sale.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1441–1445; Dec. Dig. ⚫══494.]

8. JUDGMENT ⚫══28—VALIDITY—PARTIAL INVALIDITY.

That a deficiency judgment was rendered, though not prayed for in the complaint, does not render the entire judgment void; only the deficiency judgment is void.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 39; Dec. Dig. ⚫══28.]

9. MORTGAGES ⚫══538—FORECLOSURE—TITLE.

Title acquired on purchase at sale of land for mortgage foreclosure is not subject to objections because of irregularities, in that the judgment did not exactly follow the complaint, where such defects might have been cured by amendment and the proceeds were distributed according to order of court.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1470, 1525, 1559; Dec. Dig. ⚫══538.]

10. VENDOR AND PURCHASER ⚫══197—CONTRACTS—CONSTRUCTION.

Where land subject to mortgages was sold, and the vendors agreed to accept a purchase-money mortgage for part of the purchase price, a clause in the contract reciting that as fast as payments were made both liens should be reduced by such amounts meant that payments should be applied to the reduction both of the prior mortgages and the purchase-money mortgages, and gave the purchasers right to withhold payment of any installment until they were assured a reduction of prior liens on the property would be effected.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 407; Dec. Dig. ⚫══197.]

11. VENDOR AND PURCHASER ⚫══182—CONTRACTS—PAYMENTS.

Where purchasers were bound to pay not more than a fixed amount in any one year, they are entitled, there being prior liens on the property as to which the vendors could not necessarily obtain an extension, to insist that their payments be applied to the discharge of such liens, and cannot be forced to make the agreed payments where a collection of such a mortgage would result in an increase of the yearly installments.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 352; Dec. Dig. ⚫══182.]

12. VENDOR AND PURCHASER ⚫══174—CONTRACTS—PROTECTION.

Where land subject to prior mortgages was sold, and the trustee under one of the mortgages was dead, so that court proceedings would be necessary to enable the purchasers to discharge it, the purchasers are entitled to reserve from the first payment a sum sufficient to reimburse them for necessary expenses.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 358, 359; Dec. Dig. ⚫══174.]

In Equity. Bill by Sarah C. Eckerson and others against Thomas F. Tanney and others. On motion to confirm the report of a special master directing specific performance of a contract to sell land. Report confirmed, with modifications.

The case comes on upon a motion to confirm the report of a special master in a suit for specific performance of a contract for the sale of land. An interlocutory decree on January 12, 1916, directed that on February 1st of that year the defendants should accept a deed provided the deed gave good title. The closing was to be before the special master, and he was at that time to pass upon any questions which the title raised. On the closing day

the plaintiffs presented their title, which was objected to by the defendants. The report of the special master is very complete and shows the title in detail. It is not necessary to repeat the facts here. The special master found the title was good, and directed the defendants to take it and pay the sums due, which they declined to do. Exceptions were afterwards filed to the report of the special master, and the plaintiffs moved to confirm.

Abram F. Servin, of Middletown, N. Y., and Abram J. Rose, of New York City, for plaintiffs.

George A. Blauvelt, of New York City, for defendants.

LEARNED HAND, District Judge (after stating the facts as above). The first question is of the title of the plaintiffs. The simplest way to consider this title is through the suit of foreclosure begun in June, 1913. There were three mortgages foreclosed in one complaint at that time, a mortgage of January 4, 1870, by James Eckerson and wife to John Butler, for $30,000, upon all the premises, except block E, not in controversy, a mortgage of December 26, 1871, by James Eckerson and wife to Sallie A. F. Servin, upon a part of the premises mortgaged to Butler, and a mortgage on June 24, 1874, by James Eckerson and wife to J. Esler Eckerson, upon all the premises mortgaged to Butler. All these mortgages had come to the ownership of Sarah C. Eckerson and Harriet A. Eckerson prior to the commencement of the suit of foreclosure. This suit went through to judgment of foreclosure and sale, and the referee appointed tendered his deed at the closing day, subject to the payment of $6,960.08. The title coming from this foreclosure is challenged for several reasons, each of which I shall take up in detail.

[1] The first objection is that there were joined in one complaint three mortgages which did not cover the same pieces of real property. Assuming that this was a defect, it was waived, because none of the defendants raised it at the time. Section 499 of the New York Code of Civil Procedure provides that, if an objection mentioned in section 488 is not taken by answer or demurrer, it is waived, with some exceptions of which this is not one. Section 488 provides, among other grounds for objection, the improper joinder of causes of action. The objection was not taken, so it was waived; hence this objection to the title is frivolous.

[2, 3] The second objection to the title is that the Butler mortgage had already been foreclosed by judgment of foreclosure and sale in 1872. This objection misconceives the nature of the foreclosure suit. At common law the failure to pay the bond on the due date terminated the condition subsequent by which the title could be revested in the mortgagor. The suit in foreclosure only allowed an added period within which the mortgagor might still redeem, and resulted in a reconveyance of the legal absolute title vested in the mortgagee; the important point is that the decree did not change the title. Now that a mortgage is only a lien upon the land, the mortgagee's remedy in New York, as elsewhere, is to obtain a decree directing the property to be sold and providing for the application of the proceeds to the debt. New York Code, § 1626. Yet it is the deed, and that alone, which con-

235 F.—27

veys the title of the mortgagor and mortgagee, and which changes the title to the property. New York Code, § 1632. Until the deed the mortgagor remains the owner of the equity of redemption and entitled to the profits (Mitchell v. Bartlett, 51 N. Y. 447), and the mortgagee only a lienor. The judgment only directs a sale and bars the right of redemption, but the mortgage as an interest in the real property remains quite as unaffected as did the title of the mortgagee at common law. This was the effect of the ruling in Barnard v. Onderdonk, 98 N. Y. 158, which proceeded upon the theory that the mortgage continued as a lien notwithstanding the decree of foreclosure. The judgment, so far as it touches the land, is no more than a direction that the interests of all parties shall be sold; it is the sale that changes any such interests.

Now it may very well be that the former judgment is a good bar to a second complaint for foreclosure, and that defendants could have defeated the second suit, if they had raised the point. That is, however, quite another matter from saying that the second judgment was void, or that no title could come through it. As I have shown, the lien of the mortgage still remained until sale, notwithstanding the first decree. Nothing was changed, yet it would have resulted in a more questionable title than the present to have attempted to sell under a decree more than 40 years old. When, therefore, the court, having all the parties before it, made the second decree, it did no more than make a second direction to sell, and the sale would pass the title under section 1632, under whichever decree it proceeded.

[4] The next objection is that the complaint was not properly verified, but this is a defect which is cured by failure to object, under New York Code, § 528. Therefore this objection is frivolous.

[5] The fourth objection is that action was discontinued against Zundel. The only effect of omitting this party is not to conclude him by the judgment. The plaintiffs concede that he must be paid, and are prepared to pay him. The omission has no other effect than this.

The fifth objection was that Catherine M. J. Eckerson was not made a party, but this the defendants concede was cured by a later deed.

[6-8] The sixth and final objection is that the judgment did not follow the complaint, which is said to be a jurisdictional defect where the judgment was by default. The supposed defect I am not sure that I understand. The complaint set out the three several mortgages, which were given at separate times, as already appears. The referee found the sum due upon each of the three mortgages separately, the aggregate of which was $98,981.14. This total amount due was not separated in the recitals of the judgment, and the defendants' objection may be that this recital spoils the judgment. Now the judgment itself does not reside in its recitals, but in the mandatory portions. That portion reads:

"That the report be and the same hereby is confirmed, and that the mortgaged premises described in the complaint in this action as hereinbefore set forth, or so much thereof as may be sufficient to raise the amount due to the claimants for principal, interest, costs, etc., be sold."

There can be no defect in this judgment so far as it confirms the report and directs the sale of the property. It is suggested that the complaint did not allege that the total sum of $98,981.14 was due on the Butler mortgage alone, and that it was erroneous to have the judgment read as though it did. I think that the judgment, even in its recitals, should not be so interpreted, but that it must be read with the complaint. Let me suppose, however, for argument's sake, that this is not true. What difference does it make? The land concededly did not sell for enough to pay the Butler mortgage alone, and the direction to sell under that mortgage was certainly in accordance with the complaint. Had there been more land than enough to pay that mortgage, still the sale would have had to proceed to pay the other two mortgages, but whether this would have affected any rights is academic. The point is that the judgment followed the complaint to the necessary extent to convey title. If, on the other hand, as the defendants' brief seems to suggest, the supposed defect is that a deficiency judgment was granted, though none was asked, it is hardly credible that the objection should be seriously made. If the judgment was irregular on that account, the most that could be said is that it was void pro tanto. I cannot conceive how any one could suppose that it affected the decree of foreclosure, which was prayed in the complaint.

[9] Finally, it is to be remembered that the defect, if there was a defect, did not make the judgment void. I do not mean that a complaint which did not ask for foreclosure might be followed on default by a decree in foreclosure, but that is not this case. Here the complaint asked that the property be sold to pay the mortgages, and the defendants were therefore advised of all the relief which it is necessary to this case to support. The property has been sold and the proceeds are to be distributed according to the decree. All the intermediate steps, if defective, are merely irregularities; they might have been corrected by the defendants, but they do not affect the title. Matter of Stilwell, 139 N. Y. 337, 34 N. E. 777.

Therefore I agree with the master that none of the objections to the title which come through the foreclosure suit are valid; and I find that the deed of the referee in foreclosure conveyed a valid title to the property in question. This discussion obviates the necessity of considering any of the conveyances of J. Esler Eckerson as executor to his sisters of a two-thirds interest in the property. He was a party to the foreclosure, both individually and as executor of James Eckerson, and his title was foreclosed; it also obviates any difficulty in respect of the conveyances made by him individually to his sisters of his one-third interest on March 21 and August 2, 1912. All the existing judgment creditors were joined in the foreclosure suit and have been barred, except Zundel, of whom, as I have already said, care was taken in the closing papers. I may say, however, that the last conveyance by J. Esler Eckerson as executor to his sisters was beyond question valid.

[10, 11] The next question raised is of the four mortgages left upon the property. The first of these questions is whether the contract

required by implication that the mortgages should not fall due in the aggregate at the rate of more than $12,000 a year. This depends upon the contract. The language relied on to produce this result is as follows:

"As fast as paid and by which payments both liens shall be reduced by said amounts."

This clause is hung in the air and has no grammatical structure, but I think that it none the less clearly means that as fast as the installments are paid the lien both of the purchase-money mortgage and of the prior mortgages shall be reduced. It gave the right to the vendees, who would be the mortgagors, to withhold payment of any installment until they were assured that it would effect an equal reduction in the prior liens upon the property. There is, however, no word in any part of the contract which requires the vendors to procure an extension of the underlying mortgages, so that they should not fall due before the installments of the purchase-money mortgages. Now it is true that, in Exhibit DD, De Baun asked for an extension and estoppel certificate of the mortgages to Andrew X. Fallon for $15,000, to Jasper H. Allison for $12,000, to John I. Cole for $20,000, and of that to Emily C. Jennings for $2,000. Yet it is not urged that the contract was modified at that time, so as to make an extension necessary.

I directed, however, in the earlier decree, that the purchase-money mortgage should provide that the plaintiffs might not call the underlying mortgages upon the premises held by them, so as to accelerate payments at greater sums than $12,000 per annum. The point now arises whether the defendants are not further entitled to a direction that the first payments should be held in reserve against these mortgages as the plaintiffs do not themselves hold. The question concerns the marshaling of the installments. I agree that the defendants must in any case pay $12,000 a year, but it seems to me, if they wish to do so, they should have the option of paying first those underlying mortgages which are in the hands of outsiders, and of which, therefore, I have no power to compel the holders to give extensions. If this be not so, then the defendants are subject to the peril in any year of paying $12,000 to the plaintiffs and being called upon at once to pay the whole sum of an underlying mortgage in addition. I think that the defendants should have the right to apportion the installments so as to secure the falling due of only $12,000 a year, so far as possible. I shall not, therefore, direct them to pay the installment due on April 1, 1916, to the plaintiffs, but at their option to pay the same, with interest from April 1, 1916, either to the plaintiffs or upon any of the four mortgages left upon the property. Since one of the mortgages has no present payee it will be sufficient, if the plaintiffs do not secure the appointment of a trustee, if they start proceedings to secure the appointment of a trustee within 30 days after the decree is entered, press the same through with diligence, and make the payment, with interest, within 10 days after he is appointed. While, therefore, I do not think that under the contract they are entitled to an extension, I think they are entitled to protect themselves against a double

payment in any one year by reducing mortgages already due. The plaintiffs may avoid this option of the defendants by securing proper extensions.

[12] The only other question arises from the fact that Fallon, as trustee, was the mortgagee of one of the outstanding mortgages, and, as he is dead, the title to the mortgage is in the Supreme Court. If the mortgagees wish to pay off this mortgage as indicated, they will be obliged to bring some sort of suit to secure a trustee. The only burden which this imposes upon them is that, in order to pay it off at once, some expense would be necessary. If they are allowed to retain an added sum of $1,000 against such an expense, they will be amply secured; but they must decide within 30 days. Should they institute a proceeding for that purpose, they will be allowed their expenses. In Wacht v. Hart, 120 App. Div. 189, 105 N. Y. Supp. 78, affirmed 198 N. Y. 629, 92 N. E. 1105, it appeared that the mortgage was in foreclosure which was to be an incumbrance under the contract; but the court suggested that, if the expenses of foreclosure had been provided for, the title might have been good. The question is one which money can answer, and there is ample margin within the sum of $86,000 for the allowance suggested.

As to the supposed assignment of the Emily C. Jennings mortgage, it does not appear that there is any difficulty in learning the actual mortgagee. They must also elect within 30 days if they wish to pay this mortgage.

The objection that the Finegan judgment was on appeal is not good, unless the judgment was stayed. Howard Ins. Co. v. Silverberg, 94 Fed. 921, 925, 36 C. C. A. 549. It does not appear that it was. Mere appeal does not toll the statute.

The only objection to the title which I do not overrule is that arising from the possible claim of a fraudulent conveyance by J. Esler Eckerson in the deeds to his sister of his one-third. I do not mean that this is good. I simply find it unnecessary to consider that question, and decline to pass upon the exception, as it is immaterial to a disposition of the case.

The interest calculated by the referee is subject to a modification. The purchase-money mortgage was to be "collateral," as it was called, to the underlying mortgages. So much of the interest upon the purchase-money mortgage as equals the interest upon those underlying mortgages, which the plaintiffs do not hold, is not in my judgment payable. So much as is due upon mortgages held by them is payable, if they give receipts for a corresponding amount of interest upon such mortgages. So much interest as is due upon any surplus of the purchase-money mortgage above all the underlying mortgages, with interest to the time of the contract, is immediately payable. The plaintiffs are not, however, to have the right to collect interest upon the purchase-money mortgage and add a corresponding sum to the principal of the underlying mortgages for any period after the contract was made.

The decree will therefore be as follows: The special master will hold the closing papers in escrow until the defendants make the proper payments, and, when they do, he will use them, together with

the plaintiffs' deposit to clear the title, and then deliver the papers as each is entitled, together with any overplus to the plaintiffs. The interest due will be calculated as follows: The defendants will be charged with interest upon the principal sum, $88,000, and later $86,-000, from the date of the contract till the date of decree. They will be credited with the interest during the same period upon all underlying mortgages not held by the plaintiffs, and if the plaintiffs, before the decree is entered, do not deliver receipts for the interest due under their own underlying mortgages for the same period, then they will be credited with so much interest. They will also be credited with such interest as they have paid. For the balance a decree will pass, upon which execution will issue forthwith; but the marshal will pay the proceeds to the special master, not to the plaintiffs.

The decree will likewise provide that the defendants shall have 30 days in which to pay $12,000, with interest from April 1, 1916, upon any of the underlying mortgages not owned by the plaintiffs. If within that time there is no person in being entitled to receive such payment, and the defendants shall have commenced proper proceedings to secure the appointment of such person, the time of payment is extended until 10 days after his appointment, if the prosecution be diligent. The defendants in such case shall be allowed credit upon the purchase-money mortgage, not only for such payments, but for their expenses, including counsel fee in securing such appointment, to be fixed by this court, up to $1,000. If within 30 days the plaintiffs secure extensions of such mortgages, or if within the time specified above the defendants do not pay such installment upon such mortgages, then the defendants shall pay said installment to the plaintiffs, and execution shall issue forthwith as above provided. The decree will provide that there be no costs or disbursements taxed, but that the special master shall take his fee, when allowed by the court or fixed by agreement, out of the funds in his hands. The cause will stand before him to carry out the provisions of the decree, and his report will come up later to be confirmed.