## THE RUTH.

### SELLICK v. UNITED STATES.

Circuit Court of Appeals, Third Circuit. June 14, 1927.

No. 3567.

1. **Admiralty ☞88—In suit for forfeiture of vessel, decree of forfeiture must run against vessel.**

A suit for forfeiture of a vessel for violation of statute contemplates a decree of forfeiture, whether the vessel remains in custody or after seizure is released on stipulation, in which case decree against the vessel is a prerequisite to judgment against the principal and sureties in the stipulation.

2. **Admiralty ☞57—After decree for forfeiture of vessel, claimant has 20 days to make payment before summary judgment may be entered on bond (Comp. St. § 1564).**

Under Rev. St. § 938 (Comp. St. § 1564), in a suit for forfeiture of a vessel for violation of statute after decree of condemnation against the vessel, for release of which bond has been given, claimant has 20 days to make payment before summary judgment may, on motion, be entered on the bond.

3. **Admiralty ☞88—Recitals preceding formal decree are not part thereof.**

Recitals preceding formal decree are not part of the decree.

4. **Appeal and error ☞357(2)—Delay of court in allowing appeal seasonably applied for cannot defeat right of appeal.**

Under Act Feb. 13, 1925, § 8c (28 U. S. C. A. § 230; Comp. St. § 1126b), providing that no writ of error or appeal shall be allowed unless application therefor be duly made within three months, delay by the court in allowing an appeal seasonably applied for cannot defeat applicant's right of appeal.

Appeal from the District Court of the United States for the District of New Jersey; Wm. N. Runyon, Judge.

Suit in admiralty by the United States against the gas yacht Ruth; Charles W. Sellick, claimant. From a summary judgment against claimant and sureties, claimant appeals. Reversed.

Stokes, McDermott & Hartshorne, of Freehold, N. J. (James D. Carpenter, Jr., of Jersey City, N. J., of counsel), for appellant.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Walter H. Bacon, Jr., Asst. U. S. Atty., of Trenton, N. J., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. United States filed a libel against the gas yacht Ruth for her forfeiture on four grounds, namely: (1)

That, being licensed for the coastwise trade, she proceeded on a foreign voyage without giving up her enrollment and license and without being duly registered, and thus violated section 4337 of the Revised Statutes (Comp. St. § 8086); (2) that she transported liquor and was, therefore, employed in a trade other than that for which she was licensed, contrary to section 4377 of the Revised Statutes (Comp. St. § 8132); (3) that she was used in the removal, disposal and concealment of liquor within the territorial waters of the United States with intent to defraud the revenue of the tax, in violation of section 3450 of the Revised Statutes (Comp. St. § 6352); and (4) that the master allowed liquor to be received on her in violation of section 587 of the Tariff Act of 1922 (Comp. St. § 5841h6).

After arrest and release of the boat, and the usual intermediate proceedings of appraisal, stipulation for cost and stipulation for value, Charles W. Sellick, the claimant, filed an answer in which he admitted ownership of the yacht and denied her guilt in violating any of the named sections of the statutes. The case then went to trial and, on March 30, 1926, the court entered a decree, termed the "final decree," reciting the allegations of the libel, expressing in the recital its "opinion that the libel should be sustained * * * and the said gas yacht Ruth represented by the said stipulation for value in the sum of $12,000 condemned as forfeited to the United States of America," and, "accordingly, ordered, adjudged and decreed," on motion of an Assistant United States Attorney, "that the libellant have and recover from the gas yacht Ruth and its stipulators for costs and value, to wit Louis Esposito, principal, and Harry V. Oliver, surety, the sum" of $12,494, being the amount of stipulation for value and interest, "and the United States to have judgment therefor, together with costs of suit to be taxed."

It should be noted that there was no decree of forfeiture against the yacht unless the expression of the court's "opinion" in the recital that the libel should be sustained and the yacht condemned shall be so construed, and that the decree was made against Esposito, a surety misnamed as "principal" and Oliver, the other surety, treated as sole surety, in the sum of the stipulation for value and interest, and that the decree ran not at all against Sellick, the claimant of the boat and the real principal in the stipulation.

Doubtless troubled by the patent infirmities in this "final decree," the United States Attorney moved for a "summary judgment"

which, on July 23, 1926, the court entered under the title of "summary decree" in the sum of $12,494 (the principal and interest named in the first decree), with costs for $112.07, amounting together to the sum of $12,606.07, against Sellick, claimant and principal, and Oliver and Esposito, sureties on the stipulation for value, and one Banfield, surety in the stipulation for claimant's cost, "and that libellant have execution thereon." This confusion, we surmise, was the natural consequence of the case having been handled at different stages by three judges of the District Court. One judge entertained the petition for appraisement and appointed the appraisers; another accepted the stipulation for value and released the yacht; a third tried the case and entered the first or "final decree," and the second entered the last or "summary decree."

From the last decree the claimant took this appeal, raising several questions which may be compressed into two: (a) Whether the District Court can, in an action in rem instituted to compel the forfeiture of a vessel, enter a valid decree against the stipulators for value before entering a decree on the merits for the forfeiture of the craft, or, at least, before entering a decree against the claimant; and (b) if so, whether on the facts of this case the United States was entitled to a decree of forfeiture.

We shall dispose of the last question first by holding that the evidence is sufficient to sustain a decree of forfeiture and a decree against the claimant on the merits.

[1] That in such an action a decree of forfeiture against the yacht was contemplated is evidenced generally by the penalties of forfeiture imposed by the statutes under which the libel was filed and specifically by the prayer of the libel that the yacht "be condemned and sold." This, of course, cannot be otherwise when, after arrest, a vessel remains in custody. It is equally true when the vessel has been released to the claimant on a stipulation for value, for the basis of a forfeiture of the vessel is also the basis of a judgment against the claimant. Decrees of both kinds constitute a prerequisite to recovery against the principal and sureties in the stipulation for value, as is clearly shown by section 938 of the Revised Statutes (Comp. St. § 1564) the applicable law of the case. This section provides for appraisement of a seized vessel, for a bond in the amount of the appraisal as a condition of delivery to the claimant, and the release of the vessel on giving the bond.

[2] Continuing, the statute, whose words

pertinent to the matter under discussion, we have italicized, provides as follows:

"If judgment passes in favor of the claimant, the court shall cause the said bond to be canceled; but if *judgment* passes *against* the *claimant,* as to the whole or any part of such *vessel,* * * * and the claimant does not within twenty days *thereafter* pay into the court, * * * the amount of the appraised value of such *vessel* * * * *so condemned,* with the costs, *judgment* shall be granted *upon the bond,* on motion in open court, without further delay."

This provision of the statute, as we interpret it, contemplates the prosecution of a suit instituted by libel to judgment on the merits. If against the defendants, it is twofold, namely: For the forfeiture or condemnation of the vessel and (when stipulation and release have intervened) for payment by the claimant "of the appraised value of [the] vessel * * * *so condemned.*" But here the statute pauses in its operation and gives the claimant twenty days after such judgment within which to pay the appraised value into court. Failing within that period to make payment, then, and not until then, can summary judgment on formal motion be entered against the claimant as principal and against his sureties on the stipulation for value.

[3] In the instant case there was not a decree against the vessel for forfeiture. The opinion expressed by the court in the recital of the final decree that the libel should be sustained and the yacht condemned is not such a decree. A decree does not reside in its recitals, but in its mandatory portion. Eckerson v. Tanney (D. C.) 235 F. 415, 418; Id. (C. C. A.) 243 F. 1007. Nor was there a decree against the claimant for payment of the vessel's appraised value. Thus there was no period established by judgment from which, as the statute requires, the claimant's twenty days of grace, within which he might meet his liability before execution on the stipulation, could be computed. The two decrees were entered directly, and, we think, prematurely, on the stipulation for value; the first erroneously against a surety as principal—omitting the real principal entirely—and the last against principal and sureties—omitting the yacht entirely. Neither decree is a judgment of the controversy; both are directed to the stipulation for value and purport to be decrees of execution on the stipulation—the last is expressly so—without a judgment of forfeiture or of the claimant's liability on which to base them.

Before we can formally decide the ques-

tion under discussion we must dispose of a closely related matter raised on a motion to dismiss the appeal, made by the appellee.

As to the application for an appeal and its allowance, the 1926 record entries disclose these facts:

The "final decree" was entered on March 30. On September 25 the claimant filed a notice of an appeal from that decree, and did nothing more. The "summary decree" was entered on July 23. On October 6 the claimant filed a notice of an appeal from that decree and on an uncertain date made application to the court for its allowance. The court entertained the application till November 1, when it entered an order "as of October 8" allowing the appeal (and also, on November 1, entered an "order releasing gas yacht," whatever that may mean).

[4] Thus it appears that the instant appeal, the only one applied for and allowed, is from the so-called "summary decree." After the appeal had reached this court, the appellee moved for its dismissal on several grounds. Only two groups call for discussion. These we shall state and dispose of seriatim:

"Because the time within which an appeal could have been allowed expired before application was made for an order allowing the appeal and before the appeal was allowed."

This ground is plainly based on the Act of February 13, 1925, c. 229, § 8C, (43 Stat. 940 [Comp. St. 1126b]), and as it appears in the Code of Laws of the United States at page 896 (title 28, § 230). It provides that:

"No writ of error or appeal intended to bring any judgment or decree before a Circuit Court of Appeals for review shall be allowed unless application therefor be duly made within three months after the entry of such judgment or decree."

If the appellant was late in applying for the allowance of an appeal there is substance in the ground for dismissal because the limitation of this section is mandatory and therefore jurisdictional. Muma v. Bodine (C. C. A.) 16 F.(2d) 463; The Steam Tug Albatross v. United States (C. C. A.) 19 F.(2d) 141. When the time for applying for allowance of an appeal has expired it cannot be called back or revived by a nunc pro tunc allowance. Credit Co. v. Arkansas Central Railway, 128 U. S. 258, 261, 9 S. Ct. 107, 32 L. Ed. 448. But the provision limiting this court's appellate jurisdiction does not refer to the date of the granting of an application for the allowance of an appeal. On the contrary, it is confined to the "applica-

tion therefor * * * within three months after the entry of such judgment or decree." When applied for within the statutory period the law is satisfied and the right to an appeal subsequently allowed is established on the principle followed in Weaver v. Blair, Commissioner (C. C. A.) 19 F.(2d) 16. Delay by a court in allowing an appeal seasonably applied for can not defeat the applicant's right of appeal.

Just when the application for allowance of the instant appeal was made is not satisfactorily shown by the record. Evidently it was on a day near the date of the appellant's notice that he would make such application, which was October 6, 1926. Anyway, we must regard the record as speaking the truth and, in consequence, must assume from the retroactive provision of the court's allowance of the appeal namely, "as of October 8, 1926," that the claimant made his application on or before that date, which was "within three months after the entry of [the summary] decree."

The next ground is:

"Because application for the allowance of the appeal was not duly made within three months after the entry of the final decree sought to be reviewed."

It is true that application for allowance of an appeal from the so-called final decree was not made within three months. In fact, no such application was made at all, for the obvious reason that that decree, whatever its character, did not run against the claimant, as his name was (no doubt, inadvertently) omitted. But that decree, called the "final decree," we have held, was in law only a summary decree in that it was not a decree on the merits, that is, it was not a decree of forfeiture, and was not made against the claimant, but was directed to recovery of the appraised value of the yacht from the stipulators, and then from only two of them.

The remaining grounds for dismissal are:

"(a) Because no appeal can be taken from an order for summary judgment and execution, and

"(b) Because a decree for summary judgment and execution is not a final decree."

It may be that an appeal will not lie from a summary decree for execution but that is for the reason that such a decree presupposes and is based on an antecedent final decree on the merits, of which there is none in this case. The summary decree is the last decree in the case and purports finally to put an end to the controversy by execution against the stipulators. So, likewise, was the first or

final decree intended to be; but as it was plainly defective in law and as to parties, the last decree was but an attempted amendment of the first. Obviously if the first was good, the last was superfluous; if the last was necessary it must have been because the first was bad. As the two are inseparably linked in the confusion of the litigation and as both are bad, we are constrained to deny the motion to dismiss the appeal and to hold that both decrees must be reversed—on the principle that as the last is only a substitute for or amendatory of the first, reversal of the last draws with it reversal of the first— and that the case be opened and prosecuted in harmony with this opinion.