**NORTHERN PAC. RY. CO. v. INTERSTATE COMMERCE COMMISSION.**

Court of Appeals of District of Columbia.
Submitted October 6, 1927. Decided
November 7, 1927.

No. 4621.

**1. Certiorari ⬟28(2), 29—Certiorari issues to inferior courts or special tribunals exercising judicial functions, to review proceedings for exceeding jurisdiction, but not to correct irregularities in proceedings.**

Common-law writ of certiorari, scope of which has not been enlarged by statute, issues to inferior courts and special tribunals, exercising judicial or quasi judicial functions, to review their proceedings and quash them, if they have proceeded without jurisdiction in subject-matter, exceeded jurisdiction, or deprived party of right or imposed burden without due process of law, but writ will not issue to correct mere errors or irregularities in proceedings.

**2. Commerce ⬟88—Decision of Interstate Commerce Commission, determining amount of guaranty due carriers under Transportation Act, held quasi judicial (Transportation Act 1920, § 209 [49 USCA § 77]; § 212, as added by Act, Feb. 26, 1921 [49 USCA § 79]).**

Decision of Interstate Commerce Commission, determining amount of guaranty due carriers under Transportation Act 1920, § 209 (49 USCA § 77; Comp. St. § 10071¼dd), which act was amended February 26, 1921, by addition of section 212 (49 USCA § 79; Comp. St. § 10071¼e), held quasi judicial in character, since it fixed property rights of carriers, involving complicated and voluminous facts and large sums of money.

**3. Statutes ⬟181(1)—In construing federal statute, effect should be given intent of Congress.**

It is duty of Court of Appeals of District of Columbia, in construing federal statute, to give effect to intent of Congress, which may be ascertained by giving words natural significance, or, if this leads to unreasonable result, by looking to reason for enactment, and inquiring into its antecedent history, giving it effect in accordance with its purpose, sacrificing, if necessary, literal meaning.

**4. Commerce ⬟85(3)—Interstate Commerce Commission, making advance to railroad under Transportation Act, held to retain jurisdiction to determine finally amount necessary to make good guaranty to railroad, whether less or greater than amounts theretofore certified (Transportation Act 1920, § 209 [49 USCA § 77]; § 212, as added by Act Feb. 26, 1921 [49 USCA § 79]).**

Interstate Commerce Commission, having before it railroad's claim for balance under Transportation Act, application for partial payment, and suggestion that government would be protected by balance of claim and bonds pledged for previous advance, held to have reasonable basis, under Transportation Act 1920, § 209 (49 USCA § 77; Comp. St. § 10071¼dd), which act was amended February 26, 1921, by addition of section 212 (49 USCA § 79; Comp. St. § 10071¼e), for advance of certain sum, and to retain jurisdiction both for purpose of increasing award and for determination finally of amount necessary to make good guaranty to railroad, whether less or greater than amounts theretofore certified.

**5. Commerce ⬟98—Whether Interstate Commerce Commission erred in conclusion as to amount necessary to make good guaranty to carrier held not pertinent inquiry on appeal in certiorari proceeding (Transportation Act 1920, § 209 [49 USCA § 77]; § 212, as added by Act Feb. 26, 1921 [49 USCA § 79]).**

Whether Interstate Commerce Commission erred in its conclusion on final determination of the amount necessary to make good guaranty to railroad, under Transportation Act 1920, § 209, 49 USCA § 77: Comp. St. § 10071¼dd), which act was amended February 26, 1921, by addition of section 212 (49 USCA § 79; Comp. St. 10071¼e), held not pertinent inquiry in Court of Appeals of District of Columbia, on appeal by railroad from an adverse judgment, in petition for certiorari to review decision of Commission.

Appeal from the Supreme Court.

Petition for certiorari by the Northern Pacific Railway Company against the Interstate Commerce Commission. From an adverse judgment, petitioner appeals. Affirmed.

F. D. McKenney and J. S. Flannery, both of Washington, D. C., and C. W. Bunn, of St. Paul, Minn., for appellant.

P. J. Farrell and E. M. Reidy, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District of Columbia dismissing appellant's petition for a common-law writ of certiorari to review and set aside a decision and certificate of the Interstate Commerce Commission, as "beyond the scope and powers of the Commission and null and void." The certificate in question was issued under section 209 of the Transportation Act of 1920, 41 Stat. 456 (49 USCA § 77; Comp. St. § 10071¼dd), as amended February 26, 1921, by section 212, 41 Stat. 1145 (49 USCA § 79; Comp. St. § 10071¼e), guaranteeing carriers accepting the provisions of the section an operating income, for the six months beginning March 1, 1920, of not less than one-half their annual compensation during the period of federal control.

Section 209 empowered and directed the Commission to ascertain under prescribed rules and certify to the Secretary of the Treasury the amounts due. This section also required carriers desiring to take advan-

tage of its provisions to file written acceptance of all its provisions. Appellant duly complied with this requirement. Subparagraph (h) of section 209 (Comp. St. § 10071¼dd) authorized the Commission, upon the application of a carrier, to advance to the carrier "from time to time such sums, not in excess of the estimated amount necessary to make good the guaranty, as are necessary to enable it to meet its fixed charges and operating expenses," and to certify to the Secretary of the Treasury the amount of such advances and the times at which they should be made. The Secretary was directed, upon receipt of such a certificate, to make the advances in the amounts and at the times specified in the certificate, "upon the execution by the carrier of a contract, secured in such manner as the Secretary may determine, that upon final determination of the amount of the guaranty provided for by this section such carrier will repay to the United States any amounts which it has received from such advances in excess of the guaranty," with interest.

Appellant filed with the Commission an application under section 209, whereupon, on August 14, 1920, the Commission issued its certificate in the sum of $5,000,000. Appellant then entered into a security contract with the Secretary, under which it pledged $1,250,000 in United States Liberty Loan bonds upon the following conditions: "That the determination of the Interstate Commerce Commission of the amount due under the guaranty aforesaid shall be conclusive so far as this contract is concerned, and that, upon notice of the Commission to the Secretary of the Treasury of its final determination of said amount, any sum or sums received by the carrier which are found to be in excess of the amount so determined by the Interstate Commerce Commission shall immediately become due and payable to the Secretary of the Treasury under the terms of this contract, with interest thereon. * * *"

On October 14, 1920, the Commission notified all carriers that had accepted the provisions of section 209 to file true and correct returns to the questionnaire or form of claim accompanying the order, such returns to form the basis for settlements under the section. Thereafter, in February of 1921, appellant filed its duly certified return, in which it claimed a balance of $11,715,420.57. On February 26, 1921, the amendment to the original act of 1920 was passed (41 Stat. 1145), providing:

"Sec. 212. (a) In making certifications under section 204 or section 209, the Commission, if not at the time able finally to determine the whole amount due under such section to a carrier or the American Railway Express Company, may make its certificate for any amount definitely ascertained by it to be due, and may thereafter in the same manner make further certificates, until the whole amount due has been certified. The authority of and direction to the Secretary of the Treasury under such sections to draw warrants is hereby made applicable to each such certificate. Warrants drawn pursuant to this section, whether in partial payment or in final payment, shall be paid: (1) If for a payment in respect to reimbursement of a carrier for a deficit during the period of Federal control, out of the appropriation made by section 204; (2) if for a payment in respect to the guaranty to a carrier other than the American Railway Express Company, out of the appropriation made by subdivision (g) of section 209; and (3) if for a payment in respect to the guaranty to the American Railway Express Company, out of the appropriation made by the fifth paragraph of subdivision (i) of section 209.

"(b) In ascertaining the several amounts payable under either of such sections, the Commission is authorized, in the case of deferred debits and credits which cannot at the time be definitely determined, to make, whenever in its judgment practicable, a reasonable estimate of the net effect of any such items, and, when agreed to by the carrier or express company, to use such estimate as a definitely ascertained amount in certifying amounts payable under either of such sections, and such estimates so agreed to shall be prima facie but not conclusive evidence of their correctness in amount in final settlement."

On the day this amendment was passed, appellant made application "for a partial payment on account of ten million dollars ($10,000,000), or such portion thereof as the Commission can consistently certify." In this communication appellant stated: "If partial payment of ten million dollars is made, the government will be protected by the balance of claim amounting to one million seven hundred fifty-one thousand seven hundred fifty-three dollars and eighty cents ($1,751,753.80), and the Liberty Loan bonds amounting to one million two hundred fifty thousand dollars ($1,250,000), or a total of three million one thousand seven hundred fifty-three dollars and eighty cents ($3,001,-753.80)." Thereafter, on March 3, 1921, the Commission issued to the Secretary of the Treasury its certificate in favor of appel-

lant, in which the following appears: "The Commission is not at this time able finally to determine the whole amount due under said section 209 to said carrier, but has definitely ascertained and hereby certifies to the Secretary of the Treasury that the amount of seven million dollars ($7,000,000), in addition to any other sum or sums heretofore certified in favor of the carrier, is due to said carrier under section 209 of the Transportation Act 1920."

Appellant subsequently proceeded with the prosecution of its claim for the additional amount which it contended was due over and above the $12,000,000 already received. On May 31, 1922, in complying with a general order of the Commission, appellant filed an amended and supplemental statement of its claims, amounting to $12,420,288.93, or a balance of $420,288.93. After a hearing before division 4 of the Commission, the Commission, on June 17, 1925, certified to the Secretary of the Treasury the amount necessary to make good the guaranty under section 209 and the balance found due to the United States, and thereafter the Secretary demanded payment of this balance. Upon rehearing before the full Commission, the decision of division 4 was affirmed, and the Commission issued a "corrected certificate," from which it appeared that appellant had been overpaid in the sum of $1,320,241.73.

It is the contention of appellant that partial payment under section 212 is "of the same character and force as a judgment for full payment"; that "the only difference is that partial amount payable, definitely ascertained, leaves open the question of additional amounts, whilst certificate fixing the full amount ends the inquiry." The question with which we are confronted, therefore, is whether the Commission was acting within its jurisdiction when it found, at final hearing, that the amount necessary to make good the guaranty to appellant under section 209 was less than the aggregate of amounts theretofore certified.

[1] The scope of the common-law writ of certiorari has not been enlarged by statute in this jurisdiction. It here issues to inferior courts, and to special tribunals exercising judicial or quasi judicial functions, to bring their proceedings into the superior court, where they may be reviewed and quashed if it be made plainly to appear that such inferior court or special tribunal has proceeded without jurisdiction of the subject-matter, or has exceeded its jurisdiction, or has deprived the party of a right or imposed a burden upon him or his property without due process of law. Degge v. Hitchcock, 35 App. D. C. 218, 226; Id., 229 U. S. 162, 170, 33 S. Ct. 639, 57 L. Ed. 1135. The writ will not issue to correct mere errors or irregularities in the proceedings of the inferior court or tribunal. Bradshaw v. Earnshaw, 11 App. D. C. 495, 499; Harris v. Barber, 129 U. S. 366, 372, 9 S. Ct. 314, 32 L. Ed. 697. [2] The determination by the Commission of the amount of the guaranty due the carriers, under section 209 as amended by section 212, involved complicated and voluminous facts and large sums of money. Its decision fixed property rights of the carriers, and clearly was quasi judicial in character. This we already have ruled. United States ex rel. Abilene & S. Ry. Co. v. Interstate Commerce Commission, 56 App. D. C. 40, 8 F.(2d) 901. Congress of course knew that final determination by the Commission of the amounts due the carriers under this guaranty provision would involve much time and labor. Apparently appellant also appreciated this and was quick to avail itself of the provision of section 209 (h), authorizing the Commission to advance "from time to time such sums, not in excess of the estimated amount necessary to make good the guaranty, as are necessary to enable it [the carrier] to meet its fixed charges and operating expenses."

To secure such an advance, appellant pledged with the Secretary of the Treasury Liberty Loan bonds of the value of $1,250,000, and agreed that, upon notice of the Commission to the Secretary "of its final determination" of the amount of the guaranty, "any sum or sums received by the carrier which are found to be in excess of the amount so determined by the Interstate Commerce Commission shall immediately become due and payable," etc. Apparently the provisions of section 209 were not adequate to meet the pressing needs of the carriers and the statute was supplemented by section 212. In proposing this amendment, the chairman of the House committee on interstate and foreign commerce observed (Cong. Rec. vol. 60, pp. 2736, 2737):

"We find now that the guaranty will amount to something like $600,000,000 for the railroads and $31,000,000 for the American Railway Express Company. * * * Under subsection (h) of section 209 of the Transportation Act there has been paid to the carriers by way of advances the sum of $264,000,000, and to the American Railway Express Company $19,700,000, leaving unpaid something like $340,000,000. If this bill passes, this balance may be paid in par-

tial payments. * * * The Interstate Commerce Commission, believing that the language of the law we had passed justified partial payments, issued certificates therefor. The Comptroller of the Treasury, however, held that they could not be issued, and the Secretary of the Treasury followed the decision of the Comptroller of the Treasury, which decision was confirmed by a decision of the Supreme Court of the District of Columbia. * * * So if this decision of the Comptroller of the Treasury is sustained, and final statements must be made before certificates can be issued, it may take months, and in some cases years, before settlements can be made."

As already noted, the amendment became a law on February 26, 1921, and on the same day appellant filed its application "for a partial payment on account of ten million dollars ($10,000,000), or such portion thereof as the Commission can consistently certify." In this application appellant directed attention to the fact that its claim for balance due under the provisions of section 209, over and above the $5,000,000 already advanced, amounted to $11,751,753.80; that, "if partial payment of ten million dollars is made, the government will be protected by the balance of claim amounting to one million seven hundred fifty-one thousand seven hundred fifty-three dollars and eighty cents ($1,751,753.80), and the Liberty Loan bonds amounting to one million two hundred fifty thousand dollars ($1,250,000), or a total of three million one thousand seven hundred fifty-three dollars and eighty cents ($3,001,-753.80)."

[3] It was upon this application that the Commission acted, and five days later authorized the advance of $7,000,000 to appellant. Manifestly appellant at that time placed a different construction upon section 212 than it now advances. We think the earlier construction more in harmony with the intent and purpose of Congress. As observed in Ozawa v. United States, 260 U. S. 178, 194, 43 S. Ct. 65, 67 (67 L. Ed. 199): "It is the duty of this court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance; but if this leads to an unreasonable result, plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment, and inquire into its antecedent history, and give

it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning, in order that the purpose may not fail." See, also, Panama R. R. Co. v. Johnson, 264 U. S. 375, 390, 391, 44 S. Ct. 391, 68 L. Ed. 748.

[4] Section 212 was an emergency measure, designed to afford partial and speedy relief to the carriers. If the Commission had adopted the view now advanced by appellant, the real purpose of Congress would have been frustrated, since of necessity considerable delay would have ensued. Under section 209 (h) advances were authorized upon security, and, inasmuch as the government was protected in this manner, such advances could be made upon mere estimates. As no security was required under section 212, however, the Commission was charged with the duty of making such a consideration of the facts as would disclose a substantial basis for a partial payment, and to this extent and end the Commission definitely ascertained the amount of the advance. Obviously a definite finding in the sense insisted upon by appellant would have required consideration of all the facts and formed the basis of full rather than partial payment. Something less, therefore, than a consideration of all the facts was required to authorize partial payment.

In the present case, the Commission had before it appellant's claim for a balance of more than $11,750,000, its application "for a partial payment on account," and its suggestion that the government would be protected by the balance of its claim and the Liberty Loan bonds pledged for the advance of $5,000,000. In addition, the commission knew approximately the volume of business of appellant during the period of federal control. There was, therefore, reasonable basis for the advance of $7,000,000. Appellant concedes that the Commission retained jurisdiction for the purpose of increasing the award, and it is our view that the Commission not only retained jurisdiction for that purpose, but also for the determination finally of the amount necessary to make good the guaranty to appellant, whether less or greater than the amounts theretofore certified.

[5] Whether the Commission erred in its conclusion is not a pertinent inquiry here, under authorities already cited. The judgment is affirmed, with costs.

Affirmed.