## BRADY v. INTERSTATE COMMERCE COMMISSION et al.

District Court, N. D. West Virginia.
Sept. 19, 1930.

Samuel T. Spears, of Elkins, W. Va., and George T. Bell, of Washington, D. C., for complainant.

E. M. Reidy, of Washington, D. C., for Interstate Commerce Commission.

Elmer B. Collins, Sp. Asst. to Atty. Gen., for the United States.

Eugene S. Williams and Charles R. Webber, both of Baltimore, Md., for Western Maryland Ry. Co. and Baltimore & Ohio R. Co.

Before PARKER and NORTHCOTT, Circuit Judges, and BAKER, District Judge.

PARKER, Circuit Judge.

This is a suit instituted by A. Spates Brady against the United States and the Interstate Commerce Commission, asking that certain parts of a reparation order of the Commission be set aside and annulled. The jurisdiction of the District Court is invoked and a special court of three judges asked under the provisions of the Urgent Deficiencies Appropriations Act of October 22, 1913, 38 Stat. c. 32, p. 219, abolishing the Commerce Court and transferring its jurisdiction to the District Courts. 28 USCA § 41(28), and section 47. The defendants have moved to dismiss for lack of jurisdiction.

From the bill it appears that complainant is the owner of a coal mine in West Virginia on the Coalton Branch of the Baltimore & Ohio Railroad. The Western Maryland Railroad was granted trackage rights over this branch, and complainant's mine thereupon attained the status of a joint mine, i. e. a mine served by two lines of railroad. Complainant, during a car shortage existing between October 14, 1922, and April 1, 1923, requested these railroads to accord his mine in car distribution the status of a joint mine, which would have allowed him to order 100 per cent. or less of his quota of cars from either railroad or divide the orders between the two railroads in accordance with his wishes. The railroads denied this request, but offered to furnish the quota of cars to which complainant was entitled on the basis of 80 per cent. by the Western Maryland and 20 per cent. by the Baltimore & Ohio, which offer was declined.

On October 8, 1923, complainant instituted a proceeding before the Interstate Commerce Commission attacking the acts and practices of the two railroads in refusing to accord him service comparable to that accorded a competing company as unjust, unreasonable, and unduly prejudicial and other-

wise in violation of the Interstate Commerce Act (49 USCA § 1 et seq.), and asking for an award of reparation for the damages which he had suffered as a result thereof. The Commission, after a hearing and rehearing, filed a report finding in accordance with the contention of complainant and directing that the proceeding be held open for further hearing as to the amount of damages sustained. On the hearing as to damages, complainant claimed for loss of profits which could have been realized had additional cars been available and for increased cost of producing the coal which was produced and sold, amounting in all to $57,735.11. Defendants denied that complainant had suffered any such damage, contending that his mine had been given an inflated rating and had received or been offered all the cars to which it was entitled, that the evidence as to damage was too indefinite, and that in any event the 80—20 offer should be considered in mitigation. The Commission held against defendants on the first two of these contentions, but with them on the last, saying:

"It is a familiar rule that a party suffering loss from breach of duty ought to do what a reasonable man would do to mitigate his loss. United States v. U. S. F. & G. Co., 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696; Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117; Western Real Estate Trustees v. Hughes (C. C. A.) 172 F. 206; Hall v. Paine, 224 Mass. 62, 112 N. E. 153, L. R. A. 1917C, 737. That principle is applicable here. By reasonable action on his part in accepting defendants' 20—80 offer, complainant could have increased his production to the extent of 1,825 tons in October, 1,940 tons in November, 3,960 tons in December, 4,950 tons in January, 2,545 tons in February, and 1,485 tons in March. To this extent his damage was due to his own action and defendants can not reasonably be expected to compensate him therefor."

The Commission further held that complainant was in error in computing his per car tonnage at 53.55 tons instead of 50 tons. It then proceeded to calculate lost profits and increased cost of production on the basis of the difference between the tonnage which complainant could have produced by accepting the 80—20 offer of the railroads and that which he could have produced had he been permitted to order his full quota of cars from the Western Maryland, and arrived at the sum of $12,838.31, which it held was the amount of damages sustained by him for which he was entitled to reparation.

An order was entered which, after reciting the proceedings had and referring to the reports and making them a part of the recital, proceeded as follows:

"It is ordered, that the above-named defendants be, and they are hereby authorized and directed to pay unto the complainant, on or before May 1, 1929, the amount of $12,838.31 with interest thereon at the rate of 6 per cent. per annum from April 1, 1923, as reparation on account of unduly prejudicial practices in the distribution to complainant's mine of coal cars for use in interstate commerce."

The bill complained of the finding in the report that complainant was not entitled to recover for loss which he could have averted by accepting the 80—20 offer made to him and of the finding that computation should be made on the basis of an average loading of 50 tons per car. It refers to the former as the "mitigation of loss finding," and to the latter as the "average loading finding," and avers that both were made through errors of law and without proper evidence to support them, and that they transcended the powers of the Commission. The prayer of the bill, other than for the convening of a three-judge court and for general relief, is as follows:

"2. That, after proceedings in conformity with the said District Court Jurisdiction Act, this court adjudge, order and decree that the said mitigation of loss-setoff finding and the said average loading finding and all the findings and computations auxiliary thereof contained in the said report and order of the Commission, dated February 28, 1929, are null and void and without warrant in law, and that the said findings and computations be set aside and annulled.

"3. That this court issue an order directing the Commission to reopen the proceeding in which the said report and order of February 28, 1929 was entered, to reconsider the said mitigation of loss-setoff and average loading findings, and to make corrected findings and a supplemental order consistent with the order and decree of this court."

While the bill begins with a recital that the suit is brought to "enjoin, set aside, annul and suspend certain parts of an order," etc., the prayer for relief shows clearly that no injunction is sought, and this is emphasized in the reply brief filed by complainant, which contains the following statement: "Complainant does not seek to 'enjoin' anything. The inclusion of the words 'enjoin' and 'suspend' on page 1 of the bill was in-

advertent and, insofar as complainant is concerned, may be stricken from the bill."

■■ We think it clear that the suit should be dismissed. In the first place, it is clearly not a case "brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission," to use the language of the section relied on; for the reason that it seeks not to set aside the order of the Commission, but to correct alleged errors in the findings of the Commission upon which that order is based. The order of the Commission is that which commands the railroads to pay complainant the sum of $12,838.31 by way of reparation, not the recitals of findings of fact. An "order" is a "mandate, precept; a command or direction authoritatively given; a rule or regulation." Black's Law Dictionary; 46 C. J. 1131; 42 C. J. 464. An order of the Commission is analogous to the judgment of a court; and it is well settled that the findings upon which a judgment is based constitute no part of the judgment itself even though incorporated in the same instrument. 15 R. C. L. 570; Judge v. Powers, 156 Iowa, 251, 136 N. E. 315, Ann. Cas. 1915B, 280. As said by Judge Learned Hand in Eckerson v. Tanney (D. C.) 235 F. 415, 418, "The judgment itself does not reside in its recitals, but in the mandatory portions." It has been expressly held that findings of the Commission embodied in its reports are not orders within the meaning of the statutes relating thereto. American Sugar Refining Co. v. D., L. & W. R. Co. (C. C. A. 3rd) 207 F. 733, 740–741; C., B. & Q. R. Co. v. Merriam (C. C. A. 8th) 297 F. 1, 3–5.

■ What complainant is asking is not that we set aside the order of the Commission, which directs the payment to him of $12,838.31, but that we set aside the findings upon which his damages were reduced and direct the Commission to reopen the proceeding and make "corrected findings and a supplemental order." In other words, he seeks to have us review the findings of the Commission and correct its errors as upon a writ of error or appeal; but this we have no power to do. Western N. Y. & P. R. R. Co. v. Penn. Refining Co. (C. C. A. 3rd) 137 F. 343, 354. And see I. C. C. v. Waste Merchants' Ass'n, 260 U. S. 32, 43 S. Ct. 6, 67 L. Ed. 112; Bartlesville Zinc Co. v. Interstate Commerce Commission, 58 App. D. C. 316, 30 F. (2d) 479, and Northern Pac. Ry. Co. v. I. C. C., 57 App. D. C. 318, 23 F. (2d) 221, holding that errors of the Commission

cannot be corrected by mandamus or certiorari.

■■ In the second place, even if the suit be considered as one brought to enjoin or set aside the order of the Commission, we are satisfied that the court has no jurisdiction to entertain it, for the reason that the order is a mere reparation order and is not one which may be enjoined or set aside under title 28, § 41(28), of the Code. It is true that the language of that subsection is general; but it is well settled that not every order of the Commission may be enjoined thereunder. Thus it has been held that the words, "any order," do not include an order of the Commission which dismissed a complaint, Procter & Gamble Co. v. U. S., 225 U. S. 282, 32 S. Ct. 761, 56 L. Ed. 1091; or an order fixing the date of a hearing before the Commission, U. S. v. Illinois Central Railroad, 244 U. S. 82, 37 S. Ct. 584, 61 L. Ed. 1007; or an order declaring the tentative valuation of the property of a railroad company, D. & H. Co. v. U. S., 266 U. S. 438, 45 S. Ct. 153, 69 L. Ed. 369; or an order fixing a final valuation on such company's property, U. S. v. Los Angeles & Salt Lake Railroad Co., 273 U. S. 299, 47 S. Ct. 413, 71 L. Ed. 651. And when we take into consideration the history of the Interstate Commerce Act and its amendments and the nature of reparation orders, we are certain that it was not intended that they be included among those which the court was given the power in a suit in equity before three judges to enjoin or set aside.

Reparation orders were provided for in the original Interstate Commerce Act and were to be enforced by application to the Circuit Courts of the United States. 24 Stat. 379, 384. By the Act of March 2, 1889, provision was made that actions to enforce them should be tried at law before a jury. 25 Stat. 855, 859. Until the passage of the Hepburn Act of June 29, 1906, 34 Stat. 584, no order of the Commission was reviewable on application for injunction. The statutory jurisdiction to enjoin and set aside an order was granted by that act because then, for the first time, the rate-making power was conferred upon the Commission, and then disobedience of its orders was first made punishable. U. S. v. Los Angeles & Salt Lake Railroad, 273 U. S. 299, 309, 47 S. Ct. 413, 71 L. Ed. 651.

Amending section 15 of the Interstate Commerce Act, the Act June 29, 1906 provided that the Commission should determine just and reasonable maximum rates and just.

fair, and reasonable practices with respect to transportation and issue orders to carriers with respect thereto, and that all orders of the Commission, except orders for the payment of money, should take effect within such reasonable time, not less than thirty days, as might be prescribed by the Commission, unless same should be suspended or set aside by the Commission or by a court of competent jurisdiction. 34 Stat. 589, § 4 (49 USCA § 15). By the amendment of section 16 (34 Stat. 590, § 5 [49 USCA § 16]), it drew a clear distinction between reparation orders and other orders of the Commission, by providing for suit in the Circuit Courts to collect damages in the case of reparation orders not complied with, and for application to a court of equity for the enforcement of other orders. Following this was the provision for suits to enjoin, set aside, annul, or suspend orders of the Commission; and when all of these provisions are considered together, we think it clear that the jurisdiction thus conferred was intended to relate to quasi legislative orders, in which the public at large are interested, disobedience of which is made punishable, and the suspension of which is expressly provided for by section 15 of the act, and not to reparation orders which affect only the rights of private individuals, have no binding force and do not subject anyone to punishment for disobedience. For distinction between the two kinds of orders, see Baer Bros. v. Denver, etc., R. Co., 233 U. S. 479, 34 S. Ct. 641, 58 L. Ed. 1055.

This view is strengthened when it is remembered that the Act of June 18, 1910, creating the Commerce Court, 36 Stat. 539, vested that court with exclusive jurisdiction of suits to enjoin or set aside orders of the Commission and of only three other classes of cases, viz., suits for the enforcement of orders of the Commission, other than orders for the payment of money, suits to prevent unjust discrimination and rebating under the Act of February 19, 1903 (32 Stat. 847 [49 USCA §§ 41–43), and applications for writs of mandamus to require carriers to comply with the provisions of the act. It will be noted that all three of these classes embrace only cases which are prosecuted for the benefit of the public at large and to which the public, through the representation of the Attorney General or the Commission, is a party. And we think it is a reasonable inference from the fact that suits to enjoin or set aside orders of the Commission were included with these, that such suits were understood to include only those which were brought to enjoin or set aside orders made by the Commis-

sion in its quasi legislative capacity and which affected the public at large.

In Procter & Gamble Co. v. U. S., 225 U. S. 282, 32 S. Ct. 761, 765, 56 L. Ed. 1091, in holding that there was no jurisdiction to enjoin an order of the Commission dismissing a complaint, the Supreme Court held that the provision in the Commerce Court Act conferring jurisdiction in cases to enjoin or set aside orders of the Commission was reciprocal to that providing for enforcement of orders other than for the payment of money and that it dealt with the same subject from a reverse point of view. The court said:

"The first subdivision provides for the enforcement of orders; that is, the compelling of the doing or abstaining from doing of acts embraced by a previous affirmative command of the Commission; and the second (the one with which we are concerned) dealing with the same subject from a reverse point of view, provides for the contingency of a complaint made to the court by one seeking to prevent the enforcement of orders of the Commission such as are contemplated by the first paragraph. In other words, by the co-operation of the two paragraphs, authority is given, on the one hand, to enforce compliance with the orders of the Commission, if lawful, and, on the other hand, power is conferred to stay the enforcement of an illegal order."

■ The power of this court to grant injunctions in cases of this kind is no greater than that of the Commerce Court; for we exercise jurisdiction in such cases only by virtue of the provision of the Urgent Deficiencies Act of Oct. 22, 1913, 38 Stat. c. 32, which abolished the Commerce Court and transferred to the District Courts its jurisdiction.

And when we look to the nature of reparation orders and consider the provisions which have been made for their enforcement and for the correction at law of any errors which they may contain, the conclusion that they were not intended to be included among those which might be enjoined or set aside is irresistible. As said by Judge Woolley in Pittsburgh & W. V. Ry. Co. v. U. S. (D. C.) 6 F.(2d) 646, 648: "An order of the Commission awarding reparation is not a cause of action. Nor is it in the nature of a judgment on which execution may issue. It is an award of money damages and is declared by statute to be evidence, and then only prima facie evidence, of the facts found by the Commission * * * to be used only as such in an action which may be instituted after default by a carrier to obey

the order of payment." It is not thinkable that it should have been intended that a court of three judges should be convened, with direct appeal from their action to the Supreme Court, to pass upon the validity of an order which amounts to no more than prima facie evidence.

In case a reparation order is not complied with and no suit is brought by the person in whose favor it is made, it amounts to nothing and could not, of course, be the cause of irreparable injury justifying an injunction order. If suit is brought, it proceeds "in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated." 49 USCA § 16(2). As said by the Supreme Court in Meeker & Co. v. Lehigh Valley R. R. Co., 236 U. S. 412, 430, 35 S. Ct. 328, 335, 59 L. Ed. 644, Ann. Cas. 1916B, 691, the section of the statute making these prima facie evidence "cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury." If, therefore, the carrier deems the order erroneous, it has full opportunity to correct the error or defend against it upon the trial. Pittsburgh & W. V. Ry. Co. v. U. S., supra. If the party in whose favor it is made is not satisfied with it, he may in instituting his suit set forth the cause of action for which he claims damages, and the order of the Commission, and have his case proceeded with "in all respects like other civil suits for damages," except that on the trial the findings and order of the Commission shall be prima facie evidence of facts therein contained. There is nothing in the act, we think, which limits his recovery to the amount awarded by the Commission, and there is no reason why the recovery should be so limited. The order and findings of the Commission are prima facie evidence, just as is the report of an auditor in an action at law. Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919. And there is no more occasion to limit the recovery in the one case than in the other. We are advertent to the fact that in Western N. Y. & P. R. R. Co. v. Penn. Refining Co., supra, there are expressions to the effect that recovery is limited to the amount awarded by the Commission; but we do not understand that this holding was necessary to the decision in that case and, at all events, we do not accept it as a correct statement of the law. Not only does the rule announced in the Meeker case, supra, conflict with it, but so also

does the intimation in Penn. R. Co. v. Clark Coal Co., 238 U. S. 456 at pages 472, 473, 35 S. Ct. 896, 59 L. Ed. 1406. It is apparent, therefore, that no irreparable injury is to be apprehended from reparation orders of the Commission, that any errors therein may be corrected in the trial provided for by statute, and that resort to injunction to set aside such orders is not permissible.

For the reasons stated, we think that the court is without jurisdiction to entertain the suit, and the bill will accordingly be dismissed.

Dismissed.